**Benjamin Leon BLUE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–96–00771–CR**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 4, 1998.

Randolph Earl Roll, Kristine C. Woldy, Houston, for Appellant.

John B. Holmes, Alan Curry, Houston, for Appellee.

### EN BANC OPINION ON REHEARING ON COURT'S MOTION

MARGARET GARNER MIRABAL Justice.

A jury found appellant, Benjamin Leon Blue, guilty of aggravated assault on a public servant. The jury assessed punishment at confinement for 10 years and a fine of $3000. A divided panel of this Court affirmed the judgment on June 25, 1998. Rehearing en banc was granted on the Court's own motion and the June 25 opinion was withdrawn. We substitute this opinion in its stead. We affirm.

■ In his first two points of error, appellant asserts that reversible error occurred when the trial judge made opening comments to a group of 60 prospective jurors at the beginning of the jury selection process. The comments were made before the attorneys had begun to voir dire the prospective jurors.

Appellant's trial counsel made no objection to the trial judge's comments. The subsequent voir dire proceedings cover 90 pages in the reporter's record; defense counsel thoroughly questioned the prospective jurors.

■ The general rule is that, in order to preserve for appellate review a complaint about a trial judge's comments during trial, counsel must object or otherwise bring the complaint to the trial judge's attention so the judge has an opportunity to correct the error. TEX.R.APP. P. 33.1; *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex.Crim.App.1983); *Smith v. State*, 959 S.W.2d 1, 28 (Tex.App.—Waco 1997, pet. ref'd); *Rosales v. State*, 932 S.W.2d 530, 537 (Tex.App.—Tyler 1995, review refused); *Moore v. State*, 907 S.W.2d 918, 923 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). From a review of the complete record in this case, we conclude the general rule applies.

Accordingly, we overrule points of error one and two.

■ In his third point of error, appellant asserts the evidence is factually insufficient to demonstrate that appellant knew Baytown Police Officer Woolcock was a peace officer at the time of the alleged offense.

■ In reviewing factual sufficiency of the evidence, this Court is to view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 131 (Tex. Crim.App.1996); *Wilkerson v. State*, 920 S.W.2d 404, 407 (Tex.App.—Houston [1st Dist.] 1996, no pet.). We apply the factual sufficiency test to the facts without the prism of "in the light most favorable to the verdict." *Clewis*, 922 S.W.2d at 135.

The charge in this cause reads, in pertinent part:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of November, 1995 the defendant, Benjamin Leon Blue, did then and there unlawfully, intentionally or knowingly cause bodily injury to D. Woolcock, a person the defendant knew was a public servant while D. Woolcock was lawfully discharging an official duty to-wit: attempting to detain the defendant by striking D. Woolcock in the chest with his body; or ... by striking D. Woolcock in the face with his arm; or ... by striking D. Woolcock in the face with his hand, then you will find the defendant guilty as charged in the indictment.

The evidence shows that around 3:00 a.m. on November 1, 1995, Melissa Simmons looked out her apartment window and saw the back of a man standing by a Mazda RX–7. The area was poorly lit, but Simmons could see the man wore dark clothes and white tennis shoes. The man attempted to get into the car without car keys, so Simmons called the police. Simmons watched Officer Woolcock arrive and walk up behind the man. She observed Woolcock in uniform with his flashlight and gun drawn. Simmons claimed that Woolcock yelled "police" and told the man to turn and to come with him. The man then tried to get away, but the open car door blocked his escape between the

surrounding cars. Woolcock grabbed the man's jacket, and the two men backed out from between the cars. At this point, Simmons' view was obscured by a tree, but she heard scuffling and then a gun discharge. Simmons was unable to recognize the man she saw that night.

Woolcock testified that he was dispatched at 3:48 a.m. to a vehicle being burglarized in front of an apartment complex. Woolcock was advised to look for a black male dressed in black inside the vehicle. Woolcock parked several buildings away from the site and approached on foot with his flashlight in his right hand and his pistol in his left. The area was poorly lit and could be considered dark. Woolcock was wearing his full police uniform and badge. As he approached the vehicle, Woolcock noticed that the back driver's side window was shattered and some stereo components lay on the ground between the burglarized car and the car next to it. Woolcock saw appellant leaning inside the vehicle with his sweatshirt hood over his head. Approximately two feet from appellant, Woolcock pointed his pistol at appellant, shined his flashlight on him, and ordered appellant not to move. Woolcock did not verbally identify himself as a police officer.

Appellant jerked out of the car and charged "smack into" Woolcock. As a reaction to being attacked, Woolcock grabbed appellant's shoulder with his right hand and struck appellant on either the head or shoulder with the pistol in his left hand, probably at the barrel or the trigger. Appellant continued flailing, trying to get loose and get away. At some point, appellant struck Woolcock in the chest with his body, knocking Woolcock down and causing injury to his elbow and knee. The men fell near the rear of the car, Woolcock shoved by appellant. Then both men regained their feet with Woolcock maintaining his grip on appellant's sweatshirt. Woolcock attempted to wrap appellant up with his left hand, when his arm was shoved away and his gun discharged. At the time Woolcock's arm was pushed away, the two men were chest to chest.

Woolcock had no intention of firing his weapon or shooting appellant. At the time he approached the vehicle, Woolcock's semi-automatic weapon already had a bullet in the chamber. Woolcock did not know if appellant had been shot, but appellant did curse after the gun discharged and the struggle did continue. At some point during appellant's flailing, appellant also struck Woolcock in the chin and nose, causing him pain. The men fell to the ground two more times after the gun discharged. The final time, appellant was able to struggle to his feet, wriggle out of his sweatshirt, and run off. Simultaneously, Officer White arrived at the scene and both policemen gave chase, with Woolcock eventually returning to the site of the altercation because he was "hurt, sore, and tired."

White did not see who initiated the struggle. By the time White reached Woolcock, appellant had broken free and was running away. During his pursuit of appellant, White was joined by other officers. White then returned to the crime scene to check on Woolcock and secure the crime scene.

Officer Pettigrew joined the search for appellant and was eventually directed to a homeowner's garage. There, Pettigrew found appellant hidden under a car. Appellant advised Pettigrew that he was injured because the "damn cop shot him for no reason." Appellant added that he found the car open, was just looking inside, and was only trying to get away from the officer, not hurt him. Appellant mentioned several times that the officer did not have the right to shoot him.

Pettigrew described the proper procedure for taking a suspect into custody, including leaning against the wall and spreading one's hands and legs. Appellant attempted to show that Woolcock had not followed this procedure, so appellant did not know he was a peace officer. However, Pettigrew stated that varying circumstances call for varying procedures. Officer Erickson joined the investigation after the officers found appellant. Erickson bagged the property taken from appellant, including a sheathed knife, later identified as taken from another burglarized vehicle.

After the brief scuffle, Woolcock could not identify appellant. Woolcock did see appellant later that morning when he was stepping

into an ambulance after being arrested, but Woolcock only saw appellant's back and had to be told exactly who it was. Woolcock had seen appellant before this particular incident, and, at that time, Woolcock had been wearing his uniform and discharging some duty as a peace officer. Woolcock identified pictures taken after the scuffle of his scraped knee and elbow, as well as scuff marks and holes in his pants and scuff marks on his shirt.

Appellant pled guilty to the offense of burglary of a motor vehicle. Appellant testified he was trying to remove the radio from the car when he heard footsteps behind him. When appellant turned, he saw a shadow. Appellant tried to run, but the person jumped on his back and they both fell to the ground. Appellant claimed Woolcock warned appellant that Woolcock was going to shoot him, and then the gun was fired. Appellant had a knife in his pocket that he could have used to stab Woolcock, but appellant was simply trying to get away since he did not know who was grabbing him. The entire incident "happened so fast."

Appellant stated Woolcock ran into him and appellant did not strike Woolcock in the face or chest. Appellant also claimed that, after he broke free from Woolcock and was trying to hide, appellant saw police cars and realized the man he struggled with must have been an officer. However, during the struggle appellant never faced Woolcock. Appellant testified he did not know Woolcock from any prior occasion.

■ The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to the testimony. TEX.CODE CRIM. P. ANN. art. 36.13 (Vernon 1981); *Colella v. State*, 915 S.W.2d 834, 843–44 (Tex.Crim.App.1995); *Reece v. State*, 878 S.W.2d 320, 325 (Tex.App.—Houston [1st Dist.] 1994, no pet.). The jury may believe or disbelieve all or any part of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986); *Smith v. State*, 789 S.W.2d 419, 420 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). As the exclusive judge of the credibility of the witnesses, the jury chose to believe the State's witnesses and concluded appellant knew at the time of the offense that Officer Woolcock was in fact

a police officer. In light of the evidence that Woolcock was in full police uniform, that appellant and Woolcock faced each other during the struggle, and that the lighting was good enough for Melissa Simmons to see the encounter from her apartment window, we conclude the jury's finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Accordingly, we overrule appellant's third point of error.

We affirm the trial court's judgment.

Opinion joined by Chief Justice SCHNEIDER and Justices HEDGES, TAFT and NUCHIA.

Justice HEDGES also concurring in separate opinion.

Justice TAFT also concurring in separate opinion.

Justice COHEN dissenting, joined by Justices O'CONNOR, WILSON and ANDELL.

Justice O'CONNOR also dissenting in separate opinion.

TAFT, Justice, concurring on rehearing on court's motion.

I join the en banc majority opinion, but also write separately to address Justice Cohen's dissenting opinion that raises two important issues: (1) whether the doctrine of fundamental error may be applied to excuse the failure to object to erroneous statements of a trial court; and (2) whether the standard for reviewing harm is that applicable to "constitutional" or "other" error.

### Fundamental Error

The dissenting opinion apparently relies on a split of authority, between three Court of Criminal Appeals cases decided prior to 1980 and one decided after 1980, to allow it the freedom of choice on the issue of whether the trial court's comments constituted fundamental error. The dissenting opinion relies on the recent reenactment of rule of evidence 103(d) by the Court of Criminal Appeals to tip the scales in favor of applying fundamen-

tal error in this case. I respectfully disagree with the dissenting opinion's conclusion based on: (1) the reason for the doctrine of fundamental error; (2) post–1980 developments in appellate review, making fundamental error no longer necessary; (3) the irrelevance of the reenactment of rule 103(d) to the issue presented here; and (4) the recent trend to abolish fundamental error in several areas.

### A. Rationale

Fundamental error is error that an appellate court reviews in the absence of a trial objection. The rationale for this practice is the concern that an accused has been denied a fair trial by error to which defense counsel at trial did not timely and properly object.

### B. No Longer Necessary

With the advent of the doctrine of ineffective assistance of counsel in the early 1980's, and its escalating use since, there is no longer a need for the doctrine of fundamental error. The United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) firmly established ineffective assistance of counsel as a means for appellate defense attorneys to circumvent the lack of a trial objection to obtain review of errors that deprived an accused of a fair trial.

### C. Rule 103(d)

The dissenting opinion disregards the State's reliance on *Cockrell v. State*, 933 S.W.2d 73 (Tex.Crim.App.1996) as not controlling this case because *Cockrell* dealt with improper jury argument error. Here, the error stems from the trial court's statements during jury selection. Nevertheless, the majority opinion relies on a rule of evidence which applies only to erroneous rulings on evidence. Texas Rule of Evidence 103 is titled "Rulings on Evidence."

### D. Recent Trend

During the 1970's, Texas criminal jurisprudence experienced a marked rise in the application of the doctrine of fundamental error. There was abundant fundamental error found in the indictment, in the jury charge, and elsewhere. A combination of legislation and judicial correction has largely eliminated the doctrine. The fact that the dissenting opinion's reliance on pre–1980 opinions from the court of criminal appeals, while post–1980 authority from that court is to the contrary, illustrates the recent trend against application of the doctrine of fundamental error.

### E. Summary

Having considered the rationale for fundamental error, and the wane in its application concurrent with the rise of ineffective assistance of counsel claims, I am convinced that the majority opinion is correct in following the recent trend and not applying the doctrine of fundamental error to this case.

### Standard for Reviewing Harm

Based on the statement that the error in this case is of constitutional magnitude, involving the right to be tried before an impartial tribunal, the dissenting opinion concludes that the standard of reviewing the error in this case is that in rule 44.2(a) of the Texas Rules of Appellate Procedure. I respectfully disagree from the dissenting opinion's conclusion based on an analysis of the new rules of appellate procedure and the nature of appellant's complaint before this Court.

### A. The New Rules

The new rules of appellate procedure set out two alternative standards for determining if error is reversible:

(a) *Constitutional Error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b) *Other Errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

TEX.R.APP. P. 44.2(a), (b). No case appears yet to have analyzed thoroughly what constitutes constitutional, as opposed to other, er-

ror. I suggest that constitutional error is a direct violation of a constitutional mandate; anything else is "other error." Ineffective assistance of counsel illustrates the distinction.

The Sixth Amendment to the United States Constitution provides the accused in all criminal prosecutions the right to the assistance of counsel for his defense. U.S. Const. Amend. VI. Thus, to deny an accused the right to counsel is a direct violation of the constitutional mandate, or constitutional error. Rule 44.2(a) would govern the determination of whether such error was reversible.

On the other hand, ineffective assistance of counsel certainly involves the constitutional right to counsel, *i.e.,* it is of constitutional magnitude. Yet, the United States Supreme Court has established that such error is reviewed under a standard more similar to our rule 44.2(b) (other error) than to our rule 44.2(a) (constitutional error). The denial of the effective assistance of counsel is reversible only where the accused establishes there is a probability that the result of the trial would have been different absent the deficient conduct of trial counsel. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2068.

To construe "constitutional" error as any error involving a constitutional right, or any error of constitutional magnitude, encompasses every error imaginable. For example, there is a constitutional right to due process of law. Any violation of a rule or statute could be viewed as violating due process. Hence, all error would be "constitutional" error.

Rule 44.2(a) is taken directly from former rule 81(b)(2) which was the standard imposed by the United States Supreme Court for violations of federal constitutional law. *See Chapman v. California,* 386 U.S. 18, 25, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). It is, therefore, appropriate to limit the application of rule 44.2(a) to direct violations of constitutional provisions.

## B. Nature of Appellate Complaint

Here, appellant's brief raised the issue, not in terms of a violation of a constitutional mandate to be tried by an impartial tribunal, but in terms of the trial court making improper comments that, because of the trial court's authoritative position, prejudiced the jurors against appellant and his counsel. While the manner in which an appellant raises the issue on appeal should not be determinative, it is revealing where, as here, the point of error is not expressly stated in terms of a direct violation of a constitutional provision.

Like violations of due process, a great many alleged errors on appeal can be articulated in terms that they caused the jury to be prejudiced and, thus, not impartial. Any distinction between constitutional error and other error would vanish because all error would be constitutional error.

## C. Summary

Having analyzed the difference between constitutional error and other error in the new rules of appellate procedure's standards for determining reversible error, I would narrowly define constitutional error as a direct violation of a constitutional provision. I would hold the error in this case is other error. Therefore, I respectfully disagree with the dissenting opinion's conclusion that the error in this case was constitutional.

### Conclusion

With this additional explanation, I join the en banc majority opinion.

HEDGES, Justice, concurring on rehearing on court's motion.

I join the en banc majority opinion, but also write separately to express that, while I am sympathetic to the dissenting argument, I believe that it is contrary to the dictates of the court of criminal appeals.

In *Marin v. State,* 851 S.W.2d 275 (Tex. Crim.App.1993), the court of criminal appeals described three categories of rules, the last of which was "rights of litigants that must be implemented upon request." *Id.* at 279. For this category of rights, an objection is required in order to preserve a complaint about their denial on appeal. In *Moore v. State,* 907 S.W.2d 918, 923 (Tex.App.—Hous-

ton [1st Dist.] 1995, pet. ref'd), I wrote that a trial judge's comment on the weight of the evidence, because it falls in to the last *Marin* category, requires an objection to avoid waiver. In other words, under *Marin*, there can never be fundamental error for comment on the weight of the evidence.

I recognize that my holding in *Moore* was a one-judge holding: one panel member concurred, holding that fundamental error was possible in this context but that the facts before us did not warrant its use, and another panel member dissenting, holding that the judge's comments in that case constituted fundamental error. I also recognize that there was no en banc review. I simply stand by my own opinion and leave others to draw their own conclusions as to *Moore's* precedential value.

I also recognize the line of cases cited by the dissenting opinions permit appellate review of this complaint based on fundamental error. I cannot reconcile *Marin* with these cases. I leave it to the court of criminal appeals to do so.

COHEN, Justice, dissenting.

I respectfully dissent.

In point of error one, appellant contends the trial judge erred by telling the venire, "I prefer the defendant to plead because it gives us more time to get things done...." In the second point of error, appellant contends the trial judge erred by telling the venire it was the defense attorney's duty to present false testimony. I will discuss these points together.

The judge's first statement was made as he apologized to the venire for their long wait outside the courtroom. The judge discussed another case and then stated:

The second case [this one], which we are going on, is a situation where the attorney has been speaking to his client about what does he want to do. And when you are on the button like these cases, it's a question. *Frankly, an offer has been made by the State or do I go to trial. And he has been back and forth so I finally told him I had enough of that, we are going to trial. You have been sitting out here and this is*

*holding up my docket and I can't get anything done until we know if we are going to trial or not.*

*Frankly, obviously, I prefer the defendant to plead because it gives us more time to get things done* and I'm sure not going to come out here and sit. Sorry, the case went away and we were all trying to work toward that and save you time and cost of time, which you have been sitting here and *I apologize about that. I told the defendant that. Like I said, I have enough of this and going to trial.*

(emphasis added)

In the second statement, the judge was explaining why a defendant, although innocent, might not testify. He stated:

Because there are many reasons why defendants do not testify and I have seen many that have nothing to do with their guilt or innocence. I have seen defendants that are so nervous they could not hear the question much less respond to one. There are defendants that have speech impediments. There are defendants that, frankly, look guilty and they are not guilty and their attorney tells them I don't think you'd make a good witness because you cannot enunciate, not really set forth what you are trying to say very well. And you will be up there and stammering and stuttering, and it probably won't look good for you.

*It's like I tell all the juries and I get Sister Teresa and I represent her for mass murder. And she is as guilty as driven snow and the jury doesn't know that but the defendant's attorney knows it because she admitted it privately. What am I going to do? I am going to put Sister Teresa on the stand because nobody thinks she would tell a lie. She looks like she would be a very honest person and I can put her on the stand.* I could have a defendant as innocent as can be and looks guilty and I wouldn't put her on the stand.

(emphasis added).

Finally, while explaining the presumption of innocence, the judge stated:

I can tell you *in the 40 years that this courthouse has been here,* in this court-

room, *several people* that have come through here *have been found not guilty by juries* and everyone of them are here by indictment.

(emphasis added). This last statement iŝ not complained of on appeal.

## A. WAIVER

Appellant did not object to the judge's statements. Thus, the State contends the error was waived, citing *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App.1996). The *Cockrell* court held that objection is required to preserve error arising from improper jury argument. It did not discuss the issue before us, whether objection is required to preserve error in the trial judge's statements to the venire. Thus, *Cockrell* does not control this case.

The decisions of the Court of Criminal Appeals are split on this issue. At least one holds that failure to object to this type of error constitutes waiver. *Sharpe v. State,* 648 S.W.2d 705, 706 (Tex.Crim.App.1983); *accord Smith v. State,* 959 S.W.2d 1, 28 (Tex. App.—Waco 1997, pet. ref'd); *Rosales v. State,* 932 S.W.2d 530, 537 (Tex.App.—Tyler 1995, review refused).

At least three Court of Criminal Appeals opinions and several from this Court state that reversal may occur even without objection because of a judge's "fundamentally erroneous" statements. *Brewer v. State,* 572 S.W.2d 719, 721 (Tex.Crim.App.1978); *Hart v. State,* 447 S.W.2d 944, 952 (Tex.Crim.App. 1969); *Dempsey v. State,* 387 S.W.2d 891, 893 (Tex.Crim.App.1965); *Moore v. State,* 907 S.W.2d 918, 923 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd) (The concurring and dissenting justices stated they would reverse without objection if the judge's statements constituted fundamental error); *Cade v. State,* 795 S.W.2d 43, 45 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd.). All found that similar error was waived by lack of objection, unless the statements were fundamentally erroneous.

Although Justice Taft argues against it, the Court of Criminal Appeals has recently unanimously reaffirmed that, at least in regard to evidence issues, there is a doctrine of fundamental error in criminal cases. On March 1, 1998, the court reenacted Rule of Evidence 103(d), which provides:

> (d) **Fundamental Error in Criminal Cases.**
>
> In a criminal case, nothing in these rules precludes taking notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court.

Thus, I would hold that these complaints constitute fundamental error, and therefore, they were not waived by lack of objection. *See Brewer, Hart, Dempsey,* and *Moore,* all cited above.

## B. THE JUDGE'S STATEMENTS

The judge's first statement told the jury that 1) the defendant and the State were bargaining over how appellant would plead, 2) appellant could not decide how to plead, 3) appellant was delaying things, 4) the judge wanted the defendant to plead, apparently guilty, in order to save time, and 5) the judge felt a need to apologize for the delay caused by appellant. The judge's second statement told the jury that it was a defense attorney's duty to present false testimony. The judge's third statement told the jury that in 40 years, only "several" people had been found not guilty.

The trial judge is required to maintain an attitude of impartiality throughout the trial. *Lagrone v. State,* 84 Tex.Crim. 609, 209 S.W. 411, 415 (Tex.Crim.App.1919). The trial judge's language and conduct carries special and heavy weight with jurors. *Clark v. State,* 878 S.W.2d 224, 226 (Tex.App.-Dallas 1994, no pet.); *Livingston v. State,* 782 S.W.2d 12, 14 (Tex.App.-Dallas 1989, pet. ref'd). The judge shall not at any stage of the proceeding before the verdict make any remark calculated to convey to the jury his opinion of the case. Tex.Code Crim. P. Ann. art. 38.05 (Vernon 1979). The judge should not comment on the weight of the evidence in the jury's presence during any stage of the proceeding. *Id.* The judge's comment constitutes reversible error if it is reasonably calculated to prejudice the defendant's rights. *Sharpe,* 648 S.W.2d at 706. Each of the

judge's statements indicated to the jury the belief that appellant was probably guilty.

The Court of Criminal Appeals has held that when a prosecutor made a statement like the judge's second statement in this case, the harm was too great to be cured by an instruction to disregard. In *Bell v. State*, 614 S.W.2d 122, 123 (Tex.Crim.App.1981), the prosecutor told the jury:

> Mr. Scheve [defendant's counsel] is a criminal defense lawyer. He doesn't have the same duty I do. He represents the criminal. *His duty is to see that his client gets off even if it means putting on witnesses who are lying.*
>
> Mr. Scheve: Your honor, we object to that.
>
> The Court: I sustain the objection. That is not his duty. It is not his duty to put on any witness that he knows is lying.
>
> Mr. Scheve: And furthermore, I would ask for a mistrial.
>
> The Court: I'll deny the mistrial. I have instructed the jury that that's not a correct statement of the law.

(emphasis added).

The Court of Criminal Appeals did not hesitate to reverse. Its entire opinion occupied one column of one page. It stated:

> The effect of this argument was to instruct the jury that only prosecuting attorneys seek to uphold truth and justice whereas defense counsel have a license to use any means to mislead the jury (all citations omitted). By his argument, the prosecutor was striking at the appellant over the shoulders of his counsel in an attempt to prejudice the jury against appellant. The argument was improper and the trial court's instruction to disregard was not sufficient to remove the prejudice it created. The trial court erred in overruling the appellant's motion for mistrial.

*Id.* at 123.

Reversal was required in *Bell* even though the judge's instruction to disregard was immediate (even before any request was made), sharp, and repeated. The judge's statements here were at least as prejudicial as the prose-

cutor's statement in *Bell*[1], and they were more prejudicial than those in the majority's cases. *See Smith*, 959 S.W.2d at 28 (Judge read former Rule of Criminal Evidence 610, barring leading questions); *Sharpe*, 648 S.W.2d at 706 (The judge said, "Nobody expects you to be intellectually dishonest, but the law does infer compromise as far as you feel like that is the right thing to do."); *Rosales*, 932 S.W.2d at 537 (statements not described).

## C. WAS THE ERROR HARMFUL?

We are dealing here with error of constitutional magnitude, the right to be tried before an impartial tribunal. Thus, the standard of review is that in Tex. Rule App. P. 44.2(a), "... the Court of Appeals must reverse a judgment of conviction ... unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction...." *But see Tumey v. Ohio*, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927) ("No matter what the evidence was against him, he had the right to have an impartial judge."); *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62, 93 S.Ct. 80, 83–84, 34 L.Ed.2d 267 (1972). (Trial de novo does not cure harm arising from trial before judge who was not neutral.)

The case law gives little guidance in how to determine harm from this particular type of error. I believe we should consider the entire record, with special attention to the strength of the evidence. If the evidence was so overwhelming that a guilty verdict was inevitable even without the erroneous remarks, I would affirm. If a guilty verdict was not inevitable, I would reverse.

The only issue at trial was whether appellant knew the person he assaulted was a police officer. The officer testified the assault occurred at 3:48 a.m. as he approached appellant, who was bent over inside a car burglarizing it, in an area that was "poorly lit and could be considered dark." The police officer was alone and in uniform. The officer approached silently, and when he was two feet behind appellant, the officer pointed his pistol, shined his flashlight, and ordered ap-

---

1. In contrast to the facts in *Bell*, the statements here came from the judge, not the prosecutor, there were three statements, not one, and there was *no instruction to disregard*.

pellant not to move. Significantly, the officer testified he did not identify himself as a police officer. He testified that appellant "jerked out of the car and charged smack into" him. The struggle was on, and they continued struggling to the ground several times, during which time the officer's gun discharged and appellant was shot.

When apprehended, appellant told the arresting officer that the "damn cop shot me for no reason" and that he was only trying to get away from the officer, not to hurt him, and that the officer had no right to shoot him. Appellant admitted these statements, but said he did not know until after breaking free that he had fought a police officer. He said that as he fled, hid, and saw numerous police cars chase him, he realized that he must have fought a police officer.

The evidence shows that (1) the fight occurred at a dark place, (2) all or mostly at a distance of an arm's length or less, (3) with the combatants not separating until appellant fled, that is, until after the assault was complete, and (4) the police officer testified he did not tell appellant he was an officer. This suggests that a guilty verdict was not inevitable. That conclusion is supported by the fact that the jury deliberated on appellant's guilt one hour and 39 minutes, which was longer than it took the State to present its case and almost as long as the entire case. During its deliberations, the jury sent the judge two notes, the first asking for all photographic evidence and the second asking for the definition of "resisting arrest." Given this record, I cannot conclude beyond a reasonable doubt that these errors did not contribute to the conviction.

If, as Justice Taft contends, the correct standard of review for harm in this case is Tex.R.App. P. 44.2(b), I would reach the same conclusion. That rule provides that in criminal cases, "Any other (i.e., non-constitutional) error, defect, irregularity or variance that does not affect substantial rights must be disregarded." I believe the judge's comments in this case affected substantial rights that are protected by statute, art. 38.05 of the Code of Criminal Procedure, and by previously cited case law. The application of that body of law to this body of evidence

would justify reversal under either part of rule 44.2.

I would sustain points of error one and two, reverse the judgment, and remand the cause.

Opinion joined by Justices O'CONNOR, WILSON and ANDELL.

O'CONNOR, Justice, dissenting on rehearing on court's motion.

The majority overrules point of error one because the appellant did not object to the error. I dissent because no objection was necessary.

In this case, the trial judge told the venire panel the appellant was considering pleading guilty and that, in the trial judge's opinion, the appellant should have pled guilty and was wasting everyone's time. The trial judge made the following statements in an attempt to apologize to the venire for a long wait in the hall. The first part of the explanation involved another case that was set before the appellant's case. After discussing the other case, the court said:

> The second case [this one], which we are going on, is a situation where the attorney has been speaking to his client about what does he want to do. And when you are on the button like these cases, it's a question. Frankly, an offer has been made by the State or do I go to trial. And he has been back and forth so I finally told him I had enough of that, we are going to trial. You have been sitting out here and this is holding up my docket and I can't get anything done until we know if we are going to trial or not.

> Frankly, obviously, I prefer the defendant to plead because it gives us more time to get things done and I'm sure not going to come out here and sit. Sorry, the case went away and we were all trying to work toward that and save you time and cost of time, which you have been sitting here and I apologize about that. I told the defendant that. Like I said, I have enough of this and going to trial.

Ordinarily, a timely objection is required to preserve error. TEX.R.APP. P. 33.1; *John-*

*son v. State*, 803 S.W.2d 272, 291 (Tex.Crim. App.1990). However, I believe the judge's statements were so prejudicial that the effect could not have been cured by any instruction, explanation, clarification, correction, or modification. Nothing the trial judge could have said to the venire panel could withdraw the information he had already provided — the appellant was considering pleading guilty, or the impression his comments left — that the appellant should have pled guilty and was wasting everyone's time. The only appropriate relief that defense counsel could have requested was a mistrial. After the judge's comments, the appellant was entitled to start over with another venire. An objection was not necessary to preserve the error for review because the judge's statements undermined the appellant's due process rights to a fair trial by an impartial jury.

Thankfully, there are not many cases where the appellate courts are called upon to review error by the trial judge in informing the jury or the venire that the defendant is guilty. However, there is one. In *Hay v. State*, 472 S.W.2d 157, 158 (Tex.Crim.App. 1971), after the jury had retired to deliberate, it returned into open court to present the verdict. The trial court noticed neither of the verdict forms was signed and instructed the jury foreman to sign the charge. *Id.* He did so, and when it was returned, the trial judge saw the foreman had signed the "not guilty" form. *Id.* at 160. Believing the foreman had inadvertently signed the wrong form, the judge told the jury he "believed they had done it wrong," and told the jury to go back and deliberate further. *Id.* at 158. The jury then returned a "guilty" verdict. *Id.* at 159. The Court of Criminal Appeals held the judge's action amounted to a statement to the jury that a verdict of not guilty was "wrong," and reversed. *Id.* at 160.

The critical issue here was whether the appellant knew that the person who grabbed him in the dark from behind and with whom he struggled, was a police officer. The officer with whom the appellant struggled testified he did not identify himself as a police officer and admitted he did not see the appellant's face and could not identify him. The appellant testified he did not know he was

fighting with a police officer. However, the judge's pretrial comments essentially informed the venire that the appellant thought he was guilty. As in *Hay*, we should reverse for a new trial.

I would find the appellant did not receive a fair trial after the trial judge informed the venire panel that the appellant was considering making a plea of guilty.