**Cesar Dario DEVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–99–00013–CR.**

Court of Appeals of Texas, San Antonio.

March 22, 2000.

George E. Shaffer, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: TOM RICKHOFF, Justice.

Cesar Dario Devis appeals his conviction of one count of murder along with four counts of aggravated assault. Appellant raises four points of error: 1) that the trial court erred during voir dire by commenting on the weight of the evidence; 2) that the trial court erred in failing to remove defendant from the courtroom when defendant's attorney absented himself from a pre-trial hearing; 3) that the trial court erred in allowing the state to display weapons not in evidence without a limiting instruction; and 4) that defendant's trial counsel rendered ineffective assistance. We affirm the judgment of the trial court.

### Facts And Background

On December 20, 1997, at approximately 4:00 a.m., a shooting took place outside the La Estrellita restaurant on Nogalitos Street. One person, Robert Alvarez, was shot and killed. Alexander Palma, Jaime Rodriguez, Arnold Reyna, Jr., and Arnold Reyna, Sr. were injured by gunfire. Appellant was indicted along with two co-defendants; Tomas Hernandez and Miguel Gutierrez. The indictment charged appellant with the offenses of murder and aggravated assault. At trial, both Jaime Rodriguez and Arnold Reyna, Jr. identified appellant as a shooter. The jury found appellant guilty on all counts and assessed punishment at 60 years for the offense of murder and 2 years for each aggravated assault. The trial and motion for new trial were presided over by visiting Judge Eschenburg. The pre-trial identification hearing was presided over by Magistrate/Master Carruthers.

### Point of Error Number One

At the onset of the jury selection process, the trial judge sought to explain the punishment phase of the trial. The appellant had filed an application for probation; and thus, the jury had to consider probation under certain circumstances. The court instructed the jury as follows:

And also, in this case if the defendant has filed an application for probation, and you may wonder why you have to do that prior to you finding him-or deciding guilty or not. Because under our law, if he's eligible for probation-and I will explain that-he has to file that before we start the trial, even though later you may find that he is not guilty and he goes free. But if this defendant had never been convicted of a felony, and if you decide the appropriate punishment is between five years and ten years, then you must be willing to consider probation, even if you find him guilty of murder.

What that means is, you do not have to give this defendant probation. And if you decide the appropriate years, or any 11 or more, then by law you cannot even consider probation. But if you decide if you're-if you find him guilty, that the appropriate punishment for him lies between either five years or ten years, then you also have to consider whether you will give him probation. You don't have to, but you have to consider it.

So I want you to think about that. Because right now you do not have to make up your mind ahead of time. No way in the world would you find some-

body guilty of murder and give him probation.

The judge then goes on to explain that in a mercy killing you may want to consider probation; however, in a murder involving torture you should probably give him the maximum.

■ To the jury, the language and conduct of the trial court have a special and peculiar weight. *See Livingston v. State*, 782 S.W.2d 12, 14 (Tex.App.-Dallas 1989, pet. ref'd). Accordingly, the trial court should never "make any remark calculated to convey to the jury [its] opinion of the case." TEX.CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1999); *Clark v. State*, 878 S.W.2d 224, 226 (Tex.App.-Dallas 1994, no pet.). The jury was entitled to give the defendant probation if they found him guilty of murder and sentenced him between 5–10 years. Thus, the trial judge committed error in this case by disclosing his opinion of a material issue properly before the jury.

■ Generally, in order to preserve for appellate review a complaint about a trial judge's comments during trial, counsel must object or otherwise bring the complaint to the trial judge's attention. TEX. R. APP. P. 33.1; *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex.Crim.App.1983); *Hoang v. State*, 997 S.W.2d 678, 680 (Tex. App.-Texarkana 1999, no pet. h.); *Blue v. State*, 983 S.W.2d 811, 812 (Tex.App.-Houston [1st. Dist.] 1998, pet. granted). Arguably, the appellant waived his complaint on review by failing to object. *Hoang*, 997 S.W.2d at 680; *Blue*, 983 S.W.2d at 812. According to *Hoang*, any error contained in the Texas Code of Criminal Procedure and not in the Texas Rules of Evidence must be properly preserved or it is waived, regardless of whether or not it was a "fundamental error". *Hoang*, 997 S.W.2d at 680. Whether or not an appellate court in the absence of a trial objection should make a determination of whether the trial court's comments amounted to fundamental error, is unsettled law. *See Id.; Blue*, 983 S.W.2d at 814–815.

■ Regardless of whether the error is fundamental error or not, if we "determine beyond a reasonable doubt that the court's error made no contribution to the conviction," we should hold the error harmless. *Tennison v. State*, 814 S.W.2d 484, 486 (Tex.App.-Waco 1991, no pet.). After the jury chose to sentence the defendant to 60 years of incarceration, probation was not an option for the jury. Thus, the jury's conclusions were unaffected by the Judge's erroneous instruction. *See Lee v. State*, 874 S.W.2d 220, 225 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). We hold that the trial court's error was harmless and not reversible error.

### Point of Error Number Two

On May 22, 1998, the defendant appeared in the magistrate court before Judge Carruthers. He appeared with co-defendants Miguel Gutierrez and Tomas Hernandez. The pre-trial hearing was held in order to hear the appellant's co-defendants' identification suppression motions. Primarily the purpose of the hearing revolved around the photo array identification of Miguel Gutierrez. While on the witness stand, Jaime Rodriguez identified appellant as a shooter with a shotgun. Appellant's counsel was present and cross-examined Jaime.

Later, with the court's approval, trial counsel for appellant determined that it was unnecessary for him to be at the hearing. The court did not subsequently order the appellant to leave the courtroom, nor did trial counsel request that he be returned to custody. While appellant's counsel was absent, appellant was identified by victim-witness Arnold Reyna, Jr. The court recognized appellant's need for counsel, and ordered the hearing in recess until trial counsel returned to the courtroom.

Appellant argues that the court violated his Sixth Amendment right to counsel by either allowing appellant's trial counsel to leave or failing to order the appellant removed from the courtroom once his attor-

ney had left. In addition, appellant argues that the identification was impermissibly suggestive and should be suppressed.

In effect, after counsel left, the appellant was subjected to a pre-trial identification. As the co-defendants were sitting together the prosecution asked Arnold Reyes, Jr.:

Q. Okay. Wednesday night who did you see at the café?

A. I seen each of these gentlemen right here, all three of 'em 1, 2, and 3.

. . . .

Q. Okay. Arnold, did you see number 1 on Saturday morning about the time of the shooting?

A. Yes, I did.

Q. Okay. Number 1 is Cesar Devis.

A. Okay.

Q. What was he doing?

A. At the time of the shooting he was the one that I saw with the gun.

■■■■ As the State admits, a pretrial identification conducted after a suspect has been indicted is a critical stage in a criminal prosecution at which the Sixth Amendment entitles the accused to the presence of counsel. *Moore v. Illinois,* 434 U.S. 220, 224, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977). The State argues that the right to counsel was protected by the preservation of cross examination. However, counsel is required throughout the proceeding so that the accused's counsel can object to suggestive features of a procedure before they influence a witness's identification. *Id.* at 225, 98 S.Ct. 458.

■■■■ The State also asserts that appellant failed to properly preserve this issue for appellate review. Upon returning to the trial, appellant's trial counsel objected to the identification. However, trial counsel failed to get a ruling on that objection, failed to file a motion to suppress the identification, and failed to object at trial that the identification made at trial was tainted by this pre-trial identification. Thus, he arguably waived error. *See Archie v. State,* 615 S.W.2d 762, 764 (Tex. Crim.App.1981); *Paez v. State,* 995 S.W.2d 163, 173 (Tex.App.-San Antonio 1999, pet.

ref'd); *Baskin v. State,* 672 S.W.2d 312, 314 (Tex.App.-San Antonio 1984, no pet.). However, all of these cases are distinguishable in that they took place before any formal judicial proceedings were instituted. *See Archie,* 615 S.W.2d at 764; *Paez,* 995 S.W.2d at 173; *Baskin,* 672 S.W.2d at 314.

■■■■ In our case, formal judicial proceedings were instituted and appellant's right to counsel had fully attached. After the right to counsel has attached, a criminal suspect cannot be subjected to a pre-trial identification in the absence of counsel without violating the Sixth Amendment. *Moore,* 434 U.S. at 224, 98 S.Ct. 458; *Kirby v. Illinois,* 406 U.S. 682, 690, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1971). There is nothing in the record evidencing that appellant knowingly waived his right to counsel. As such, it was error for the magistrate court to allow the identification to take place without the presence of counsel. *Moore,* 434 U.S. at 224–225, 98 S.Ct. 458. The right to counsel is fundamental to the proper functioning of our adjudicatory process and cannot be forfeited by inaction alone. *Marin v. State,* 851 S.W.2d 275, 278–279 (Tex.Crim.App.1993).

■■■■ The result of the magistrate court's error is that the prosecution may not support or buttress a later in-court identification of the witness by any reference to the previous identification. *Barnhill v. State,* 657 S.W.2d 131, 132 (Tex. Crim.App.1983). Furthermore, the in-court identification is not admissible at all unless the prosecution can establish by clear and convincing proof that the testimony was of independent origin and not the fruit of the earlier identification made in the absence of the accused's counsel. *Id.* at 132.

■■■■ In determining whether the evidence offered established that the identification was of independent origin, we consider the following factors: 1) the opportunity the victim-witness had to observe the alleged criminal act; 2) the exis-

tence of any discrepancy between any pretrial identification and the actual description of the defendant; 3) any identification prior to the lineup of another person; 4) the identification by picture of the defendant prior to the lineup; 5) the failure to identify the defendant on a prior occasion; and 6) the lapse of time between the alleged act and the lineup identification. *Loserth v. State*, 985 S.W.2d 536, 548 (Tex.App.-San Antonio 1998, pet. ref'd).

The shooting occurred on the morning of December 20, 1997. Appellant was first identified at the pretrial hearing on May 21, 1998. He was not identified previously in a photo array by any of the victim-witnesses. In fact, according to detective Thomas Matjeka, Arnold Reyes, Jr. previously in a photo lineup "without any hesitation whatsoever" identified Tomas Hernandez as the person with the shotgun. At the pretrial hearing, with counsel present, appellant was first identified by Jaime Rodriguez who had a chance to see him both at the window of the restaurant prior to the shooting and with a shotgun during the shooting. Later in the proceeding Arnold Reyes, Jr. also identified appellant, this time with counsel absent. Given the prior misidentification, and the short and hectic opportunity Arnold Reyes, Jr. had to view the appellant, the State arguably did not meet its burden of proving the independent origin of his identification. *See Loserth*, 985 S.W.2d at 548.

In any case, the violation of appellant's Sixth and Fourteenth Amendment right to counsel at the pretrial identification and the failure to exclude evidence derived directly from that violation is subject to harmless constitutional error analysis. Tex.R.App. P. 44.2(a); *Moore*, 434 U.S. at 232, 98 S.Ct. 458. A constitutional error that is subject to harmless error review requires reversal unless the appellate court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *In re M.R.R.*, 2

S.W.3d 319, 325 (Tex.App.-San Antonio 1999, no pet.). In determining harm, the question is not whether the outcome was proper or whether there was overwhelming evidence of guilt, but whether the overwhelming evidence "dissipates the error's effect upon the jury's function in determining the facts so that it did not contribute to the verdict." *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). We must isolate the error and all its effects, then ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *See id.* at 588. To make this determination, we consider: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) the probable collateral implications of the error; and (5) whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* at 587. We do not focus on the propriety of the outcome of the trial, but on the integrity of the process that led to conviction and punishment. *Id.* at 587–588.

In our case, while the trial court should have recognized the potential problems immediately when counsel sought to leave, the source of the error was appellant's trial counsel. The trial court immediately suspended the proceeding after the identification and preserved cross-examination. Thus, there is no reason to believe that the State intended to taint the process. *See Irizarry v. State*, 916 S.W.2d 612, 616 (Tex.App.-San Antonio 1996, pet. ref'd). In addition, another victim-witness, Jaime Rodriguez was able to identify appellant as a shooter in substantially identical testimony as that of Arnold Reyes, Jr. Therefore, we hold that the admission of the identification testimony was harmless.

### Point of Error Number Three

Appellant's third point of error is that the trial court erred in allowing the State to display certain weapons in front of the jury, a high powered rifle and a shotgun, without a limiting instruction. After the

weapons had successfully been entered and marked as State's exhibits 48 & 49, counsel finally chose to object. "Your Honor, could we put those aside? They're just inflaming people around here." Counsel never got a ruling on his objection. Later in the proceeding after the guns had been used several times counsel renewed his objection in a bench conference.

Counsel: ... I was under the impression that they were the weapons that were found, and otherwise, I'm sure I would have objected to them presenting them in court. But since they are demonstrative, my only objection would be that they are presenting them to the Jury, showing them in open court, did nothing more than to inflame and prejudice the defendant's case. They're inflammatory. And again, I thought the— I believe that the jury got the impression that these were the weapons used in the crime and—

The court: Well, we'll clear up that problem with the Jury when they come back.

Counsel: Okay, Judge.

 Despite the court's assurance, it never addressed the jury about the weapons. Appellant by failing to make a timely objection and obtain a ruling arguably waived his right to bring appeal on this error. See *Bhakta v. State*, 981 S.W.2d 293, 296 (Tex.App.-San Antonio 1998, pet. ref'd). However, a complaint and a request was made to the trial court with sufficient specificity to make the trial court aware of the issue, and a ruling was eventually made by the court preserving error. See *Tucker v. State*, 990 S.W.2d 261, 262 (Tex.Crim.App.1999).

 Demonstrative weapons can be utilized by the prosecution if: 1) the original is not available; 2) if available the original would be admissible; 3) if it is relevant and material to an issue in controversy; 4) its probative value outweighs any inflammatory effect; and 5) the jury is instructed that the weapon is not the weapon used in the commission of the crime, and is to be considered by the jury

solely as evidence that demonstrated or illustrated what the object used in the offense looks like. *Miskis v. State*, 756 S.W.2d 350, 352 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd). The trial court erred by failing to instruct the jury on the appropriate consideration of the weapons. *Id.* at 352. However, this error can be considered harmless under TEX.R.APP. PROC. 44.2(b). *Id.*

The weapons were never presented by the prosecution as the weapons used in the offense. In the prosecutors closing remarks he stated, "These weapons are here for demonstrative purposes so that you can see what kind of weapons were used, so that witnesses can refer to weapons, and that it can be clear to you. We don't have the weapons. But you know what? We don't need to." Likewise, defense counsel in its closing argument also stressed that the demonstrative weapons were not the weapons used in the offense. Therefore, error was harmless.

### Point of Error Number Four

Appellant's fourth point of error, that trial counsel was ineffective, is necessarily related to his first three points of error. Appellant argues that trial counsel was ineffective by failing to preserve error under point of error number one regarding the pre-trial instruction on punishment, by leaving his client during a pre-trial hearing as discussed under point of error two, and by failing to object appropriately to the introduction of weapons used for demonstrative purposes under point of error number three. He also cites the court to several other instances in the trial where counsel was ineffective including: failing to make and get rulings on objections; poor opening and closing arguments; returning late from a recess and being held in contempt of court by the trial court judge; and exhibiting a general lack of preparation.

 The criteria for assessing ineffective assistance of counsel has been set forth by the United States Supreme Court

in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* test focuses on reasonableness, measuring the assistance received against the prevailing norms of the legal profession. *Id.* at 690, 104 S.Ct. 2052. Counsel is presumed to have rendered adequate assistance, and it is incumbent on the defendant to identify those acts or omissions which do not amount to reasonable professional judgment and are outside the "range of professionally competent assistance." *Id.* To show prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. The constitutional right to counsel, whether appointed or retained, does not mean errorless counsel. *Castoreno v. State*, 932 S.W.2d 597, 604 (Tex.App.-San Antonio 1996, pet. ref'd).

■ We first address counsel's most glaring and unusual example of ineffective assistance, leaving his client during the pre-trial hearing. In the motion for new trial, trial counsel explained that upon leaving the pre-trial identification hearing it didn't occur to him to request the removal of his client from the courtroom because he presumed the court would do it. Trial counsel inexcusably disregarded his role in protecting the rights of his client, undermining the fairness of the pretrial proceeding. Judge Eschenburg, during the motion for new trial, offered this attention line, "Well, I have some grave concerns about what happened at the hearing that Magistrate Carruthers presided over ... I think that the defendant didn't get the best representation that's possible, but I think it's close enough that I'm going to let the Fourth Court decide."

We find that trial counsel was ineffective; however, there must also be a showing of prejudice. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. As explained under point of error number two, trial counsel's cross-examination of the witness after the identification was preserved by the action of the court. In addition, a witness identi-

fied appellant as a shooter in the pre-trial proceeding prior to counsel leaving the proceeding. Thus, counsel fails to demonstrate prejudice.

■ In the motion for new trial, trial counsel also explained that he failed to object to the State's use of the demonstrative weapons because of a misrepresentation by the State, and because he felt that after they were shown to the jury the damage was done. His lack of awareness as to whether the State could produce the authenticated weapons demonstrated his lack of appropriate preparation for this case. However, due to the previously explained reasons under point of error number three, there was no showing of prejudice on this error. Nor was there any prejudice shown by appellant's failure to preserve point of error number one. We previously found both errors harmless.

■ Appellant cites several other examples of inadequate representation by trial counsel attributed by appellant to his total lack of preparation, lack of rational thought, and lack of logical presentation of a defense at trial. During trial counsel's opening argument he inexplicably challenges the prosecution by saying, "I expect that they will only be able to produce one person that said they saw this man do anything. And that person is the co-defendant." This is despite the fact that at a prior pretrial hearing appellant was identified by two of the victim-witnesses. During punishment he chose not to make an opening statement. When the court inquired if appellant's trial counsel wanted to make an opening statement, he gave a conflicting response, "Yes, your honor. Under protest, I would like to make a statement. But at this time I would like to call the father of the defendant." Whereupon he was cut off by the court, because the State had not yet presented its evidence. Appellant also complains that trial counsel failed to get a ruling on a variety of pre-trial motions, and often failed to make appropriate objections or get rulings on the objections he did make.

Although appellant cites several examples of trial counsel's deficiencies, appellant fails to demonstrate a reasonable probability that but for counsel's unprofessional errors the result of the trial would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *McFarland v. State,* 928 S.W.2d 482, 501 (Tex.Crim.App. 1996). In addition, except for trial counsel's decision to leave the hearing and his decision to not object to the demonstrative weapons, the record provides no discernible explanation of the motivation behind trial counsel's acts and omissions, whether those actions were of strategic design or the result of negligent conduct. *Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Crim. App.1999). Without a fully developed record, appellant is unable to negate the strong presumption that the conduct of counsel during trial fell within the wide range of reasonable assistance. *Id.* at 814–815.

Counsel did put the defendant on the stand to present his defense. He cross examined all of the prosecution's witnesses, engaged in extensive voir dire, and put both of appellant's parents on the stand during punishment. Finally, after being found guilty of murder, appellant was sentenced to only 60 years for the murder out of a possible 99 years. Therefore, given the exceedingly short leash on our review,[1] appellant failed to affirmatively demonstrate ineffective assistance of counsel.

We affirm the judgment of the trial court.

---

1. There appears to be an increase in allegations of ineffective assistance of counsel. In response, the court of criminal appeals has tightened the standard of review. *See e.g., Thompson v. State,* 9 S.W.3d 808 (Tex.Crim. App.1999). In my judgment, this is precisely the wrong response. Intermediate appellate court justices have experience and expertise in evaluating the performance of counsel and are competent to exercise judgment on an issue this subjective. Before appellate review, no participant can stop an obviously ineffective performance by defense counsel. Criminal defendants, usually not part of the most vocal or analytical segments of society, are most often unable to identify ineffectiveness, speak for themselves, and urge a resolution. *See Roe v. Flores–Ortega,* —— U.S. ——, ——, 120 S.Ct. 1029, 1042–43, 145 L.Ed.2d 985, —— (2000) (Souter, J., dissenting). Trial judges are entirely frustrated. Once counsel is appointed or retained, a trial judge generally lacks authority to unilaterally remove counsel. Trial judges have no formal process for clearly identifying and recording incidents of ineffectiveness. Occasionally, a trial judge will remark on the record that counsel's performance may be deficient. *See e.g., Bone v. State,* 12 S.W.3d 521 (Tex.App.-San Antonio, 1999, pet. filed)(not designated for publication). Certainly, the opposing advocate can do nothing. Following the trial, even if we as appellate justices believe in good conscience that we have identified an ineffective performance, we are unable to satisfy the standard of review imposed upon us. *See, e.g. Mitchell v. State,* 974 S.W.2d 161 (Tex.App.-San Antonio 1998), *vacated,* 989 S.W.2d 747 (Tex. Crim.App.1999) The bar has no effective program to identify, mentor, or eliminate ineffective defense counsel. We all proceed with the fiction that anyone who passes the bar is competent to defend all but capital cases. The result is an institution unable to remedy a problem all recognize as increasing. Our criminal justice system operates on the assumption that both defendant and the State will have able and effective counsel. Unless and until the court of criminal appeals revisits this issue, trial judges and intermediate appellate courts are powerless to ensure that this assumption is justified.