**Roger PAEZ, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–95–00935–CR.**

Court of Appeals of Texas,
San Antonio.

Jan. 13, 1999.

Rehearing Overruled April 13, 1999 and May 24, 1999.

Discretionary Review Refused Sept. 15, 1999.

Jacob Bruce Henry, San Antonio, for Appellant.

Susan D. Reed, Crim. Dist. Atty., San Antonio, for Appellee.

Before PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice and FRANK MALONEY, Justice.[1]

## OPINION

FRANK MALONEY, Justice (Assigned).

The appellant was charged by indictment with the offense of burglary of a building. The indictment also charged that appellant had previously been convicted of a felony. The jury found appellant guilty and at the punishment hearing assessed a term of 50 years incarceration in the Institutional Division of the Texas Department of Criminal Justice.

Appellant presents 12 points in his appeal before this Court.

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

## FACTS

Evidence showed that La Fiesta grocery store on Blanco Road in San Antonio, Bexar County, Texas was burglarized at approximately 2:00 a.m. on December 6, 1992. Two San Antonio police officers, Officer Marcus and Officer Mound, arrived simultaneously at the scene of the burglary and noticed that the back door of the store was open. At that time, two subjects ran out through the open door; according to Officer Marcus, he got a "thorough look" at one of the individual's face for "three or four seconds." The appellant was apprehended that same evening some two hours later and was returned to the store where Officer Marcus identified him as one of the individuals who had exited the store. At trial both Officers Marcus and Mound identified the appellant as one of the individuals who they saw exiting the store on that evening. In addition to the testimony of the two officers, Officer Sanders testified that he apprehended the appellant at approximately 3:30 a.m. that morning; appellant was hiding in the bushes two or three blocks from the store.

The appellant did not testify during the guilt/innocence part of the trial, but did testify at the punishment hearing. During his testimony he said that he was found guilty and must accept the verdict, but he also indicated that he believed the officers were lying.

## POINT I.

Appellant maintains that the evidence is factually insufficient to establish that he committed the offense. He states that the record shows that as to the second individual who came out of the store, who the officers identified after his arrest as appellant, the officers did not give a detailed description of that second individual prior to appellant's arrest, except to say that he was wearing dark clothing and was 5'7" and 165 pounds with black hair. A photo made of appellant after his arrest

showed that appellant was wearing dark clothes and a sweat-top with a design on the front, as well as a plaid shirt. There was no mention by Officer Marcus of the design on the shirt at the time he gave his description. He maintains that Officer Marcus at trial finally admitted that he saw only a side view of the clothes and face of the second subject, although Officer Marcus's description of the first subject was very detailed. In addition, the evidence showed that there were two wrecking bars and a crowbar found at the scene; but no fingerprints were found on the crowbar or wrecking bars or found anywhere in the store, despite the fact that the office was ransacked. The testimony showed that neither subject was wearing gloves and that gloves, socks, or bandanas were not found at the scene.

The State maintains that the evidence established that the back of the store was pretty well lit up and that the officer's car lights also lit up the area. Officer Marcus testified that there was "no doubt" that the appellant, Roger Paez, Jr. was one of the individuals he saw running out of the back door. Marcus testified that he temporarily caught appellant at the store, at which time he got a "good look at appellant again." Officer Mound testified that he also saw the appellant come out the back door of the store and he "looked straight at" Officer Mound. He further testified that he and Marcus arrived seconds apart. "We almost arrived simultaneously." Officer Dale Sanders testified that he apprehended the appellant an hour and one-half after he received the call at 2:00 a.m. Around 3:30 a.m. he found appellant hiding in the bushes two or three blocks from the store. The appellant was "almost exhausted," "real tired," and "breathing hard."

In the case of *Clewis v. State,* the Court of Criminal Appeals stated: "In conducting a factual sufficiency review, an appellate court reviews the factfinder's weighing of the evidence and is authorized to disagree with the factfinder's determination." 922 S.W.2d 126, 133 (Tex.Crim.App.1996).

"However, when conducting a factual sufficiency review, an appellate court cannot substitute its judgment of the factfinder since this would violate the defendant's rights to trial to jury." *Id.* at 129. The appellate court "views all the evidence without the prism of 'in the light most favorable to the prosecution' ... and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.*

▪ As to conflicting versions of fact, these conflicts are for the jury to decide. *See De Los Santos v. State,* 918 S.W.2d 565, 569 (Tex.App.—San Antonio 1996, no pet.). Where conflicting evidence is presented, the jury's verdict is generally regarded as conclusive unless the verdict is manifestly unjust, "shocks the conscience," or "clearly demonstrates bias." *Santellan v. State,* 939 S.W.2d 155, 165 (Tex.Crim. App.1997).

The appellant maintains that "the jury's verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust." He argues that the evidence does not show that he was the same person who had been chased in the police quadrant for approximately an hour and a half and since the pursuit was not continuous and no officer was able to keep the fleeing person in view, there is no evidence of continuity in the chase. He maintains that the presentation of appellant to Officer Marcus by Officer Sanders suggests the possibility that the identification of appellant is impermissibly suggestive and tainted the in-court identification at trial. *See Neil v. Biggers,* 409 U.S. 188, 201, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). He argues that the opportunity to view the person at the scene at the time that person was fleeing was too short and his view was that of only the side view of the face of the person exiting; that the conviction cannot stand on mere presence near the location of a break-in, citing *Alvarado v. State,* 632 S.W.2d 608, 610 (Tex.Crim.App.1982) and *Drager v. State,* 555 S.W.2d 743, 745 (Tex. Crim.App.1977); and that the only evi-

dence the State had to link appellant to the offense was the impermissibly suggestive eyewitness testimony.

The State maintains that the evidence was sufficient to establish that appellant was one of the individuals who committed the burglary. The two eyewitnesses identified the appellant as one of the people who exited the store. Appellant was hiding two or three blocks from the store an hour and a half after the burglary, "almost exhausted" and "breathing hard." The evidence does not show that the verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129. The State contends that the discrepancies, if any, between the initial description of appellant's clothes and the actual clothes appellant was wearing when he was arrested, were for the jury to resolve. Here the jury resolved the conflicts against the appellant. *De Los Santos*, 918 S.W.2d at 569.

We agree with the State and find that the evidence is factually sufficient. *See Clewis*, 922 S.W.2d at 129. Appellant's First Point is overruled.

## POINT IV.

In Point Four, appellant complains of the introduction of extraneous unadjudicated offenses, which appellant contends the jury was allowed to consider at punishment.

Appellant correctly points out that prior to 1993, evidence of an unadjudicated extraneous offense was inadmissible on the issue of punishment during the penalty phase. Act of May 28, 1989, 71st Leg., R.S. ch. 785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 505, 1993 Tex. Gen. Laws 3586 (current version at TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a) (Vernon Supp.1999)); *see Grunsfeld v. State*, 843 S.W.2d 521, 526 (Tex.Crim.App. 1992) (holding that it was reversible error to admit unadjudicated extraneous offense evidence at the punishment phase of a noncapital trial). In 1993 the Texas legislature amended article 37.07 of the Code of Criminal Procedure to allow the jury to consider at the punishment phase of a trial extraneous offenses that were not adjudicated, but only if the State proved beyond a reasonable doubt that the offense occurred and that the defendant committed the offense. TEX.CODE CRIM. PROC. ANN. art. 37.07 (Vernon Supp.1999). Appellant states that since this offense occurred prior to 1993, the amendment to article 37.07 was not applicable and evidence of the offenses was not admissible during the punishment phase of trial. Appellant argues that allowing the introduction of evidence of said offenses constituted a violation of the ex post facto provisions of the United States and Texas constitutions. Specifically, he objects to the Court's allowing evidence of the fact that he had been indicted for theft of property of the value of more than $1,500, but less than $20,000 and also indicted for the offense of delivery of cocaine.[2]

We do not reach appellant's argument on the ex post facto issue, as the evidence was offered for purposes of impeachment.

At the punishment phase of the trial, the appellant took the stand and testified on direct examination as follows:

Q. Let me ask you this: Are you asking the jury to show you some leniency in this case?

A. Yes, sir.

---

2. On September 1, 1993, the Texas Legislature amended article 37.07 to allow admission of unadjudicated extraneous offenses at the punishment trial of noncapital cases. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a) (Vernon Supp.1998). This amendment applies only to trials for offenses that are committed on or after September 1, 1993. *Voisine v. State*, 889 S.W.2d 371, 372 (Tex.App.—Houston [14th Dist.] 1994, no pet.). As pointed out by appellant, the offense occurred in this case prior to 1993. The amendment to article 37.07 is not applicable to this case.

Q. Now, this case happened three years ago; is that correct?

A. Yes.

Q. Have you tried to live a good life and a decent life?

Mr. Blount: Objection, Your Honor. He's leading his witness.

The Court: Don't lead your witness. The objection will be sustained.

Mr. Monsalvo: I'm asking him a question, Judge. I don't think that's leading him.

The Court: You're leading your witness.

Q. (By Mr. Monsalvo) Can you state whether or not you've tried to lead an exemplary type life?

A. Yes, sir.

Q. Have you tried to do the right thing?

A. Yes, sir ...

Q. Since this incident happened, have you always tried to support your dependents?

A. Yes, sir.

Q. You were kind of a wild person at one time; is that correct?

A. I wouldn't say so, sir.

Q. Okay. Well, have you changed a lot in the last three years?

A. Have I improved myself?

Q. Yeah.

A. I make effort.

On cross-examination by the State, appellant testified that on July 5, 1995 he was arrested for the offense of theft of $1,500 to $20,000. He also admitted he had been indicted for that offense. Finally, he admitted he had been booked and indicted for a drug offense.

■ The State contends that the evidence establishing the pending indictments and arrests were admissible to impeach the appellant because the appellant had opened the door on these matters. Appellant's testimony on direct that he had tried to live an exemplary life and "do the right thing" since he committed the burglary offense in this case, left the jury with a false impression about his criminal record and trouble with law enforcement.

We agree with the State. In *Ramirez v. State,* the Texas Court of Criminal Appeals stated as follows:

> There is an exception to the general rule that a party is not entitled to impeach a witness on a collateral matter. When a witness leaves a false impression concerning a matter relating to his or her credibility, the opposing party is allowed to correct that false impression. For example, "when the witness, by his direct testimony, leaves a false impression of his 'trouble' with the police, it is legitimate cross-examination to prove that the witness had been 'in trouble' on occasions other than those about which he offered direct testimony."

*802 S.W.2d 674, 675 (Tex.Crim.App.1990) (citing Nelson v. State, 503 S.W.2d 543, 545 (Tex.Crim.App.1974)).*

■ If the accused is a witness, he may be impeached by prior offenses if he leaves a false impression as to the extent of his prior arrest, convictions, charges, or trouble with the police. *See, e.g., Lopez v. State,* 928 S.W.2d 528, 531 (Tex.Crim.App. 1996); *Delk v. State,* 855 S.W.2d 700, 704 (Tex.Crim.App.1993); *Hoffman v. State,* 514 S.W.2d 248, 254 (Tex.Crim.App.1974); *Long v. State,* 820 S.W.2d 888, 895 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd.); *Holden v. State,* 628 S.W.2d 166, 167 (Tex.App.—Houston [14th Dist.] 1982, pet. dism'd).

Appellant's Point Four is overruled.

## POINTS II. AND V.

■ Appellant maintains that he received ineffective assistance of counsel because trial counsel failed to request at the punishment hearing that the jury be instructed that they must find the theft of more than $1,500 but less than $20,000 and the delivery of cocaine offenses beyond a

reasonable doubt before they could consider same.

Appellant states that ineffective assistance of counsel occurred when evidence of the two prior indictments were admitted and (1) there was no request to the court by counsel for appellant to charge the jury that the evidence might only be considered by the jury if it was shown beyond a reasonable doubt that appellant had committed the offenses, citing *Harrell v. State*, 884 S.W.2d 154, 160 (Tex.Crim.App.1994); and (2) counsel for appellant, at the very least, should have asked for a limiting instruction on the permissible use of the extraneous offenses at the punishment phase of the trial. Appellant again asserts that the law as it existed at the time of the offense precluded the admission of unadjudicated offenses at the punishment phase under any circumstance. TEX.CODE CRIM. PROC. ANN. art. 37.07 (Vernon 1981 & Supp. 1998).

The State maintains that since they were not attempting to prove that the appellant had actually committed these offenses, but rather to impeach the appellant on the issue of whether the appellant had led an exemplary life since committing the burglary charged in this case, that the jury instruction sought by appellant on proof beyond a reasonable doubt as to the extraneous offenses would have been improper. *Compare Harrell*, 884 S.W.2d at 160, *with George v. State*, 890 S.W.2d 73, 74–75 (Tex. Crim.App.1994).

The State maintains that *Cantrell v. State* is authority for the proposition that where testimony in question could only be used by the jury for impeachment, no limiting instruction to the jury is required. 731 S.W.2d 84, 95 (Tex.Crim.App.1987). In *Cantrell*, the defendant was convicted of the offense of aggravated robbery. *Id.* at 85. The Court of Criminal Appeals, in affirming the conviction, held that there was no error in failing to give requested limiting instructions. *Id.* at 95.

In *Cantrell*, evidence was offered to the effect that the defendant was in prison prior to the robbery offense charged. *Id.* at 94. At the conclusion of the evidence, he requested a limiting charge which was refused. *Id.* The trial court admitted testimony of a police officer to the effect that while a co-defendant was on bond as a result of the instant offense, the co-defendant told the officer that at the time of the offense, defendant had a gun and a knife and had forced the co-defendant to accompany him to another person's house. *Id.* at 95. The Court of Criminal Appeals believed that it was obvious that the State offered the evidence to impeach the co-defendant's earlier testimony. *Id.*

Quoting *Winfrey v. State*, 41 Tex.Crim. 538, 56 S.W. 919, 919–20 (1900), the *Cantrell* Court stated:

> Where it is apparent that the testimony can be used for no other purpose than that of impeachment, it is not necessary for the Court to limit the purpose of the same in its charge. If it could be used otherwise, either as an incriminating fact, or to exercise a strong, undue, or improper influence upon the jury as to the main issue, injurious and prejudicial to appellant, then it would have been the duty of the court to limit and restrict its effect in his charge so that no unwarranted results could ensue.

*Cantrell*, 731 S.W.2d at 95. The Court in *Cantrell* held that since such testimony could only be used by the jury for impeachment, no limiting charge to the jury was required, citing *Minor v. State*, 476 S.W.2d 694, 696 (Tex.Crim.App.1972) and *Wiley v. State*, 153 Tex.Crim. 370, 220 S.W.2d 172, 174 (1949).

The appellant here would have been entitled to a charge limiting the jury's consideration for the prior offenses admitted in evidence to impeachment only. Counsel did not request such a charge nor did he object to the Court's charge for failure to limit such testimony. The appellant, therefore, maintains that he was denied

effective assistance of counsel during the punishment phase of the trial.

In *Ex parte Walker*, the Court stated:

[the] proper standard by which to gauge the adequacy of representation by counsel at the guilt/innocence stage was articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted in Texas in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim.App.1986). The test set forth in *Strickland* simply stated requires a two-prong analysis: (1) did the attorney's performance fail to constitute "reasonably effective assistance," i.e. did the defense attorney's representation fall below an objective standard of reasonableness under prevailing professional norms; and (2) if so, was there a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different? A "reasonable probability" was defined by the Supreme Court as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

777 S.W.2d 427, 430 (Tex.Crim.App.1989).

The above test as applied to the guilt/innocence phase, however, is not the applicable test for ineffective assistance as applied to the punishment phase of the trial. In *Ex parte Cruz*, the Court of Criminal Appeals held that the second prong of *Strickland* was not applicable to the punishment stage of trial in a non-capital case. 739 S.W.2d 53, 58 (Tex.Crim.App.1987). Instead, the Court agreed that the standard set forth in *Ex parte Duffy*, 607 S.W.2d 507, 513, 516 (Tex.Crim.App.1980) is the standard on which the effectiveness of counsel is to be judged; that is, reasonably effective assistance of counsel, the sufficiency of which is gauged by the totality of the representation of the accused. *Cruz*, 739 S.W.2d at 58.

It therefore becomes necessary to examine the totality of representation of the accused in a criminal trial, which includes the entire trial as well as the guilt/innocence phase of the trial.

The record in this case is devoid of any error in either phase of the case other than the alleged error of failing to request the Court to charge the jury as to the limited application of the impeachment testimony concerning the extraneous offenses offered for impeachment at the punishment phase of the trial.

In the recent case of *Ex parte Jack Carrol Welch*, involving the question of whether or not the applicant in that case was denied effective assistance of counsel during the punishment phase of his trial because trial counsel failed to file an application for probation believing that the applicant was not entitled to probation because of a prior deferred adjudication, the Court held that under the *Duffy* standard trial counsel should have filed the motion for probation and his failure to do so denied applicant of his right to effective assistance. *Welch*, 981 S.W.2d 183, 185–86 (Tex.Crim.App.1998)

Although it could be argued that *Welch* is controlling, there is considerable difference from the failure to afford to the defendant in a criminal trial the full range of punishment, *i.e.* probation, as opposed to instructing a jury that they should not consider evidence in determining the full range of punishment.

The State also contends that even if a limitation charge were proper in this case, the requested charge might draw even more attention to the extraneous arrest and indictments, which appellant had already admitted to, and therefore, such a decision not to request such a limiting instruction might have been the result of sound trial strategy. *See Garcia v. State*, 887 S.W.2d 862, 881 (Tex.Crim.App.1994) (holding that a decision not to request a limiting instruction was a matter of trial strategy because it may "draw more attention to incriminating evidence"). The State argues that appellant has failed to overcome "the presumption that counsel's representation was reasonable." Appel-

lant's indictment contains an allegation of a prior theft conviction, to which appellant pled "true." The prior conviction placed the appellant in the position of facing punishment for a first degree felony.

The Court, in its charge on punishment instructed the jury that:

Paragraph 2 of the indictment alleges that the defendant, Roger Paez, Jr., was convicted on or about the 25th day of October, 1990, in Cause No. 89–CR–2264–C in Bexar County, Texas, of the offense of theft of $750, but less than $20,000, a felony, and that said conviction had become final prior to the commission of the offense of burglary of a building for which you have found him guilty. To this allegation in Paragraph 2 of the indictment, the defendant has pleaded "true."

The Court further charged the jury that if they found that the allegation was true, as alleged in Paragraph 2 of the indictment, they could assess punishment of the defendant at confinement in the Institutional Division of the Texas Department of Criminal Justice for life, or for any term of years not more than 99 or less than five.

The burden is on the appellant to demonstrate ineffective assistance of counsel. *Moore v. State,* 694 S.W.2d 528, 531 (Tex. Crim.App.1985).

We hold that the failure of trial counsel to have requested a charge on the issue of proof beyond a reasonable doubt as to the extraneous offenses was not deficient conduct, and we find that his failure to request a charge limiting the jury's consideration of the extraneous offenses to impeachment did not constitute ineffective assistance of counsel under the *Duffy* test.

Appellant's Points Two and Five are overruled.

## POINTS III. AND IX.

In Point Three appellant complains that he was denied reasonably effective assis-

tance of counsel in that counsel failed to investigate appellant's case adequately.

In Point Nine appellant complains that he received ineffective assistance of counsel because his attorney did not object to improper arguments of the prosecutor.

■ Appellant claims that two affidavits which were not attached to his motion for new trial establish counsel's failure to investigate his case, contending that counsel never interviewed the two affiants. The affidavits are not a part of the record in this case.

As stated heretofore in our discussion of Points Two and Five, the Supreme Court of the United States established a two-prong test for evaluating ineffective assistance claims. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)

The burden of proving ineffective assistance of counsel is upon the appellant and he must do so by preponderance of the evidence. *Patrick v. State,* 906 S.W.2d 481, 495 (Tex.Crim.App.1995). Appellant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *see also Greene v. State,* 928 S.W.2d 119, 122 (Tex.App.—San Antonio 1996, no pet.).

As far as the second prong of the *Strickland* test is concerned, again the burden is upon the appellant to show "that counsel's errors were so serious as to deprive the appellant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

■ When alleging ineffective assistance based on counsel's failure to conduct a sufficient investigation, the appellant must show how his representation would have benefited from the additional consultation. *Harling v. State,* 899 S.W.2d 9, 12 (Tex.App.—San Antonio 1995, pet. ref'd). That is, there must be a showing of prejudice to the effect that counsel's ineffective

performance rendered the result unreliable or fundamentally unfair. Since the affidavits are not before us and not a part of the record, the allegations in the affidavits, if any, cannot be accepted as a fact. *See Miranda v. State,* 813 S.W.2d 724, 738 (Tex.App.—San Antonio 1991, pet. ref'd.). Nothing is presented for review.

In Point Nine appellant complains that he received ineffective assistance of counsel because his attorney did not object to alleged improper arguments of the prosecutor.

As set out in the briefs, his claim is predicated upon the prosecutor's closing argument at the guilt/innocence stage of the prosecution, as follows:

> Now, Officer Marcus saw the defendant, and he ran around the wall and he saw him again. He got two looks at him. You heard that evidence. You know what the evidence is. Then the chase began, and it all fits together very nicely.

However, the testimony in the record of Officer Marcus established that the prosecutor's argument is supported by the record:

> ... as [the suspects] were running towards that area, I went around to the front to make sure nobody was coming out the front; and then as they did that, I caught one of them as they were going over and got a look at them again, which was subject one, as he was going over the part of the brick wall and started jumping fences.

Points Three and Nine are overruled.

## POINT VI.

■ In Point Six, appellant complains that the trial court erred when it admitted Officer Marcus' in-court identification of appellant.

Appellant predicates his contention on the arguable fact that Officer Marcus had but a brief opportunity to view the persons fleeing from the La Fiesta Store; that it was not until some two hours later that appellant was presented in handcuffs to Officer Marcus for identification. Appellant contends that due process rights afforded him with regard to admission of identification evidence were violated in that the pretrial identification procedure was suggestive and conducive to mistaken identification, leading to the subsequent use of that identification at trial, citing *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and *Webb v. State,* 760 S.W.2d 263, 269 (Tex. Crim.App.1988).

Appellant contends that as a single suspect under arrest at the time of his presentation by Officer Sanders to Officer Marcus, this is similar to the presentation of a single photograph to a prosecuting witness. *See Madden v. State,* 799 S.W.2d 683, 695 (Tex.Crim.App.1990) and *Herrera v. State,* 682 S.W.2d 313, 318 (Tex.Crim. App.1984).

The record shows that counsel for the appellant did nothing to challenge the identification of appellant other than cross-examination. There was no pre-trial identification hearing in an attempt to suppress the in-court identification based on the sole presentation of appellant by a fellow officer an hour and a half after the officer had seen two individuals running out of a store, nor was there any objection made that the identification was tainted at the time Officer Marcus testified.

The State contends that appellant has therefore waived any error as to the admission of the identification testimony, citing *Archie v. State,* 615 S.W.2d 762, 764 (Tex.Crim.App.1981) and *Baskin v. State,* 672 S.W.2d 312, 314 (Tex.App.—San Antonio 1984, no pet.).

In *Archie,* the defendant was charged with the offense of aggravated rape, which event allegedly occurred on April 4, 1977. *Archie,* 615 S.W.2d at 764. On April 19, 1977, the prosecutrix saw the defendant in the security office of the university police. *Id.* The facts there reflect that the prosecutrix had an adequate opportunity to view

the defendant at the time of the offense and that her identification was not tainted by any confrontation. *Id.* The Court stated that there was no objection offered as to the identification and therefore, nothing was presented for review, citing *Johnson v. State,* 504 S.W.2d 493, 495 (Tex.Crim. App.1974); *Ashford v. State,* 502 S.W.2d 27, 28 (Tex.Crim.App.1973); and *Pete v. State,* 501 S.W.2d 683, 687 (Tex.Crim.App. 1973). *Id.*

In *Baskin,* defendant was convicted for burglary of a habitation. *Baskin,* 672 S.W.2d at 313. The facts indicated that the complainant arrived home from work and as he entered the house through the back door, he was confronted by a black man holding a shotgun. *Id.* The complainant described the appellant as a black man with a beard of medium height and build. *Id.* He testified that the black man took money from his wallet, struck him over the head with the shotgun and then shot him in the leg. *Id.* The defendant at trial requested that the court conduct an in-court lineup. *Id.* He argued at that time that the complainant had no independent recollection of the events at the time of the offense, but that his in-court identification was based on the photographic spread identification made at the hospital, and that appellant was the only black man in the courtroom. *Id.* The motion for the in-court lineup was filed after the jury was impaneled, after the defendant had pled not guilty and after the first witness was called. *Id.* There was no request for a pretrial hearing on a motion to suppress the identification. *Id.* at 313–14. The court concluded that a trial court is not required to hold an in-court identification process during trial and that it was within the discretion of the trial court whether or not to do so. *Id.* (citing TEX.CRIM. PROC. CODE ANN. art. 28.01 § 1(6) (Vernon Supp. 1984) and *Hicks v. State,* 508 S.W.2d 400, 403 (Tex.Crim.App.1974)). The Court of Criminal Appeals concluded that appellant waived error, if any, by not timely filing a motion to suppress the identification. *Baskin,* 672 S.W.2d at 314.

We agree with the State that the appellant here has waived error, if any, as to the admission of the identification testimony. Appellant's sixth point is overruled.

## POINT VII.

■ Appellant claims that he was denied due process of law because the State either failed to disclose exculpatory or useful evidence, or destroyed it.

Appellant requested during trial that the State produce a recording of the "911" calls made to the San Antonio Police Department on the night he was arrested. Appellant asserted that said calls would "help" [his] case. He made this request after all of the evidence had been presented and before he rested.

In *California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the Supreme Court held that the duty to preserve evidence is limited to that evidence which has an apparent exculpatory value before destruction. In *U.S. v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), the Supreme Court held that the defendant must show that the lost evidence was both favorable and material and in *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the Court held that the State is not usually penalized unless the State acted in bad faith. The appellant here argues that his due process rights were violated by the State's failure to maintain the "911" calls made to the San Antonio Police Department on the night he was arrested.

The State cites *Siegel v. State,* where the Fourteenth Court of Appeals explained that:

The holding in *Brady* requires disclosure only of evidence that is both favorable to the accused and material either to guilt or to punishment. In order to invoke the *Brady* doctrine, the accused must present evidence that: (1) the prosecution suppressed or withheld evi-

dence; (2) this evidence would have been favorable to the accused; and, (3) this evidence would have been material to the accused's defense.

814 S.W.2d 404, 407 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). The State further contends that a criminal defendant must show bad faith to establish that the failure to preserve potentially useful evidence constitutes a denial of due process. A mere showing that the lost evidence might have been "favorable" does not establish materiality. *Pachecano v. State*, 881 S.W.2d 537, 543 (Tex.App.—Fort Worth 1994, no pet.).

We agree with the State that appellant has failed to establish any of the above prerequisites and that there is nothing presented for review.[3]

Appellant's Point Seven is overruled.

### POINT VIII.

 Appellant contends in Point Eight that the trial court erred when it allowed one witness to use another person's writing to refresh his memory. During Officer Marcus' testimony, he was shown the report made by another officer in order to refresh his memory.

The report itself was not offered in evidence. It is not impermissible for a witness to use a document written by another person to refresh his memory. TEX. R.CRIM. EVID. 611. Appellant's Point Eight is overruled.

### POINT X.

In Point Ten, appellant complains that the trial court erred when it admitted a photograph of appellant which had been taken after his arrest. Appellant maintains that the admission of the photograph was improper because the photograph is suggestive of appellant's guilt. Appellant did not make this objection at trial and therefore cannot raise the point for the

first time on appeal. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990); *Clemons v. State*, 893 S.W.2d 212, 216 (Tex.App.—El Paso 1995, no pet.). Appellant's Point Ten is overruled.

### POINT XI.

In Point Eleven, Appellant argues that the trial court erred when it instructed the jury regarding the law of criminal responsibility for another.

Appellant complains that the trial court's charge during the guilt/innocence stage of the proceedings on the law of criminal responsibility was improper, citing *Brooks v. State*, 580 S.W.2d 825 (Tex. Crim.App.1979). There was no objection to this provision in the court's charge made at trial. The court's charge complied with TEX. PENAL CODE ANN. § 7.02(a)(2). Appellant's Point Eleven is overruled.

### POINT XII.

Appellant contends that the trial court erred when it failed to instruct the jury on the law of "circumstantial evidence."

Appellant complains that the jury was not instructed on "the law of circumstantial evidence." There was no objection to the charge or request on this issue made at the time of trial. In *Hankins v. State*, 646 S.W.2d 191, 199 (Tex.Crim.App.1983), the Court of Criminal Appeals repudiated the necessity to instruct the jury on circumstantial evidence. *See Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App.1991). Appellant's Point Twelve is overruled.

There being no reversible error, the judgment of the trial court is affirmed.

---

3. To his request that this case be abated for a hearing on the exculpatory evidence, the Texas Court of Criminal Appeals in *State v. Garza*, 931 S.W.2d 560, 563–64 (Tex.Crim. App.1996) has held adverse to appellant's request.