Clifford William CHETWOOD, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–99–00431–CR.

Court of Appeals of Texas, San Antonio.

Sept. 29, 2000.

Suzanne M. Kramer, San Antonio, for appellant.

Alan E. Battaglia, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

The trial court revoked Clifford William Chetwood's community supervision after he pleaded true to the State's allegations that he violated certain conditions of his probation. Chetwood appeals the revocation on the grounds that he received ineffective assistance of counsel during the revocation hearing, rendering his plea of true involuntary. We affirm the judgment.

### FACTUAL & PROCEDURAL BACKGROUND

On February 4, 1997, Clifford William Chetwood pleaded guilty to a driving while intoxicated charge. The trial court assessed his punishment at five years confinement and imposed a $1,000 fine. The trial court, however, suspended his sentence and placed Chetwood on community supervision for five years. On July 21, 1997, the trial court modified the terms and conditions of Chetwood's probation to include, under condition number 23, six months in the Intensive Supervision Program (ISP). Then, on March 20, 1998, finding that Chetwood failed to abide by the terms and conditions of his community supervision, the trial court adjudicated him as guilty and sentenced him to five years imprisonment in the Texas Department of Criminal Justice, Institutional Division. It is from this decision that Chetwood appeals. In a single issue, Chetwood claims he received ineffective assistance of counsel at the revocation hearing, rendering his plea of true to the State's allegations involuntary.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ A probation revocation hearing constitutes no part of a criminal prosecution. *See Cobb v. State,* 851 S.W.2d 871, 873 (Tex.Crim.App.1993). Instead, it is an administrative proceeding used as a means to protect society and to rehabilitate law-breakers. *See Hill v. State,* 480 S.W.2d 200, 202–203 (Tex.Crim.App.1971). Although such a hearing is administrative in nature, as an extension of the sentencing process,[1] a probationer has the right to be assisted by counsel. *See id.*(citing *Mempa v. Rhay,* 389 U.S. 128, 135, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) and U.S. CONST. amend 6). The right to assistance of counsel includes the right to reasonably effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ In assessing the effectiveness of counsel at a probation revocation proceeding, we apply the two-prong test set forth by the Supreme Court in *Strickland v. Washington. See Hernandez v. State,* 988 S.W.2d 770, 770 (Tex.Crim.App.1999). This test requires us first to determine whether counsel's performance was deficient. *See id.; Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999); *Jimenez v. State,* 804 S.W.2d 334, 338 (Tex.App.-San Antonio 1991, pet. ref'd). Counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Thompson,* 9 S.W.3d at 812. Once the appellant shows trial counsel's performance was deficient, he or she must then affirmatively establish that trial counsel's performance prejudiced the outcome of the case. *See id.* In other words, we ask whether there is a reasonable probability that the outcome would have been different but for counsel's deficient performance. *See id.*

■ In evaluating the effectiveness of trial counsel, we evaluate his or her representation as a whole and presume that counsel's conduct falls within the wide range of reasonable professional assistance. *See id.* at 813; *Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986); *Paez v. State,* 995 S.W.2d 163, 170 (Tex.App.-San Antonio 1999, pet. ref'd). An appellant challenging his or her trial counsel's performance therefore faces a difficult burden and "a substantial risk of failure." *See Thompson,* 9 S.W.3d at 813. He or she must prove by a preponderance of the evidence that trial counsel's performance was ineffective. *See Thompson,* 9 S.W.3d at 813. Accordingly, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See id.* Failure to make such a showing defeats an ineffectiveness claim. *See id.*

■ Chetwood claims on appeal that his trial counsel failed to adequately review the condition of community supervision requiring that he attend the ISP and the motion to revoke, which alleged he violated that condition. Specifically, Chetwood points out that the trial court added condition number 23 to his probation terms on July 21, 1997, requiring him to attend the ISP for six months. The probation condition appears as follows: "INTENSIVE SUPERVISION PROGRAM Participate in the Intensive Supervision Program and comply with all rules, regulations and instructions as directed by the Court and/or Supervision Officer. You will report every Monday at 8:00 a.m. or at such time that may be scheduled by the Supervision Officer." Immediately following the condition is a handwritten notation that says "(6 mos)." The notation does not, however, indicate when the six month period begins and ends. Chetwood argues that the ISP requirement began when the condition was added on July 21, 1997, and expired six months later on January 21, 1998. Chetwood makes this argument despite the fact that he did not meet the ISP requirement for much of that six month period because he was incarcerated for a separate offense.

---

1. *See* TEX.CODE CRIM. P. art. 42.12 § 1 (Vernon Supp.2000)

Chetwood was, in fact, in jail at the time the condition was added on July 21, 1997, and was released from jail in November, 1997.

The State's motion to revoke probation alleges Chetwood failed to attend the ISP during the months of February and March, 1998. The State argues that Chetwood's obligation to attend the ISP began upon his release from jail in November, 1997, and was therefore effective through May of 1998. Chetwood argues that because the condition in question expired in January, 1998, he had no legal obligation to attend ISP in February or March of that year. Chetwood argues that had his trial counsel thoroughly reviewed his conditions of probation and the motion to revoke, he would have discovered that the ISP condition had expired before the dates the State alleged Chetwood failed to appear. Chetwood claims this oversight amounted to ineffective assistance of counsel and that had his trial counsel made this discovery, he would not have advised Chetwood to plead true to the alleged probation violation. He therefore claims that this uninformed advice rendered his plea of true involuntary.

Both Chetwood's and the State's interpretations of the ISP condition of probation are equally plausible. Chetwood's counsel may have reasonably believed that the ISP condition did not take effect until Chetwood was released from jail in November, 1997.[2] Under these circumstances we cannot conclude that Chetwood's counsel's performance was deficient. The record before us does not affirmatively demonstrate ineffective assistance of counsel. Chetwood has therefore failed to rebut the presumption that trial counsel acted reasonably and has

not shown ineffective assistance of counsel. Accordingly, we affirm the trial court's judgment.

Dissenting Opinion by: CATHERINE STONE, Justice.

STONE, Justice, dissenting.

Because I believe the record establishes that Clifford Chetwood received ineffective assistance of counsel at his probation revocation hearing, I respectfully dissent.

The majority has reasoned that it cannot find that defense counsel's performance was deficient because "[b]oth Chetwood's and the State's interpretations of the ISP condition of probation are equally plausible." (P4). Faced with two equally plausible interpretations, the majority concludes that counsel could have believed the State's interpretation, and thus counsel cannot be found ineffective. I disagree.

The two interpretations of the ISP condition are complete opposites, and only one interpretation can be correct. It was trial counsel's duty to determine the correct interpretation, and advise Chetwood on the basis of the correct interpretation. Neither the record nor relevant case law supports the State's interpretation of the ISP condition, and Chetwood should have been so advised.

The very basis of Chetwood's appellate complaint is that the ISP condition was stated in the order simply as a six month requirement, but with no beginning date specified. In the absence of a specified starting date, or other qualifying language, the terms and conditions of an order become effective on the date the order is signed. See *State v. Rosenbaum*, 818 S.W.2d 398, 402 (Tex Crim.App.1991)(holding that starting date for appellate timeta-

---

**2.** Chetwood points to the "Recommendation for Intensive Supervision Program Extension" motion as evidence that even his probation officer understood that the ISP condition began on July 21, 1997. Chetwood, therefore, concludes that his trial counsel was ineffective in not reaching a similar interpretation. He reaches this conclusion based upon

the motion's language which indicates that he had completed six months in the program. The motion, however, expressly states that "[Chetwood] did not begin reporting to ISP until November 25, 1997 ..." and, accordingly, does not indicate that Chetwood's interpretation is any more plausible than the State's.

bles is date order is signed); *In the Interest of Simpson*, 932 S.W.2d 674, 677 (Tex. App.-Amarillo 1996, no writ)(holding that time period to file motion for new trial begins from date judgment is signed). In the instant case there was no qualifying language noting a different effective date for the ISP. The only notation is a parenthetical "(6 mos)", indicating the duration of the condition, but not the starting date. Under these circumstances, it was not reasonable for trial counsel to assume that the ISP condition was to begin at any time other than who the order was signed.

The State contents that it was reasonable to assume that the ISP condition was to begin at some later date because Chetwood was incarcerated on an unrelated matter when the order was signed. However, the order imposing the ISP condition included no language indicating that Chetwood's period of reporting would be suspended during the period of incarceration. Indeed, the record indicates that the State did not assume that the ISP condition was suspended during Chetwood's incarceration. Rather, the State filed a Motion to Extend ISP, reciting that the first six-month period of ISP had been completed.[1]

In short, the order imposing ISP must prevail, not the State's subsequent assertion that the ISP condition "obviously" did not apply while Chetwood was in jail. Under the State's argument, we would be required to honor an allegation by Chetwood that the ISP condition did not apply while he was hospitalized; his mother, father, sister, brother, spouse, or child was hospitalized with their final illness; or he suffered from debilitating depression which prevented him from leaving the house. The fact is, any of these "excuses" -- from incarceration to debilitating depression -- constitute a possible defense to a motion to revoke for failing to report for ISP. They do not, however, constitute an automatic suspension of the ISP reporting requirement.

For these reasons I believe Chetwood received ineffective assistance of counsel, rendering his plea of true involuntary. I therefore dissent.

1. It could be argued that Chetwood indeed completed his full six months' of ISP--incarceration must surely be the most intensive supervision available.