11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Steven Craig Ingold

Appellant

Vs.                   No.  11-01-00048-CR B Appeal from Collin County

State of Texas

Appellee

 

The jury
convicted Steven Craig Ingold of the aggravated sexual assault of his
six-year-old daughter, A.I., and sentenced him to confinement for 20
years.  Appellant presents the following
issues for review: (1) appellant=s constitutional rights were violated when the trial court instructed
the jury that good conduct time could be applied to him when it legally could
not; (2) the trial court abused its discretion when it refused to hold a live,
oral hearing on appellant=s motion for new trial; (3) the trial court erred in finding the
complaining witness competent to testify; (4) appellant received ineffective
assistance during the guilt/innocence stage; and (5) appellant received
ineffective assistance during the punishment stage.  We affirm.








Appellant
does not challenge the sufficiency of the evidence.  A.I.=s
mother, Aimee Elizabeth Ingold, testified that, in August 1999, A.I. told her
that she did not want to see her father anymore and that she was afraid of
him.  Soon after this, A.I. went with
her mother to see Suzanne Schultz, a psychotherapist.  A.I. drew pictures while visiting Schultz which indicated where
appellant licked her and which showed Schultz what she considered to be their
private areas.  The jury saw these
pictures, and Schultz told the jury about conversations she had with A.I. when
she drew the pictures.   Janetta
Michaels, a forensic interviewer at the Children=s Advocacy Center in Plano, showed the jury an anatomical drawing on
which A.I. had identified the male Aprivate part@
during an interview.  During her first
interview with A.I., A.I. gave Michaels sufficient detail about the
incident.   A.I. testified that
appellant touched her private areas with his fingers and that he licked her
private areas when she had her panties off. 
A.I. said that appellant also made her touch his private areas with her
hands and that she licked his private areas when his underwear was off. 

In his
first issue for review, appellant asserts that his State constitutional right
to due course of law and his Federal constitutional right to due process
protection were violated because the trial court improperly instructed the jury
that good conduct time could be applied when it legally could not.

Aggravated
sexual assault is a felony.  TEX. PENAL
CODE ANN. ' 22.021 (Vernon Supp. 2002).  TEX. CODE CRIM. PRO. ANN. art. 37.07,  ' 4(a) (Vernon Supp. 2002) provides that, if the offense of which the
jury has found the defendant guilty is listed in TEX. CODE CRIM. PRO. ANN. art.
42.12, ' 
3g(a)(1) (Vernon Supp. 2002), the court shall charge the jury as
follows:

Under the
law applicable in this case, the defendant, if sentenced to a term of
imprisonment, may earn time off the period of incarceration imposed through the
award of good conduct time.  Prison
authorities may award good conduct time to a prisoner who exhibits good
behavior, diligence in carrying out prison work assignments, and attempts at
rehabilitation.        If a prisoner
engages in misconduct, prison authorities may also take away all or part of any
good conduct time earned by the prisoner. 


 

It is also
possible that the length of time for which the defendant will be imprisoned
might be reduced by the award of parole. 


 

Aggravated sexual assault
is listed in Article 42.12, section 3g(a)(1). 
However, TEX. GOV=T CODE ANN. '
508.149(a) (Vernon Supp. 2002) provides that an inmate cannot be released to
mandatory supervision if the inmate is serving a sentence or was previously
convicted of aggravated sexual assault.

 Appellant=s constitutional rights were not violated.  The court in Luquis v. State, 72 S.W.3d 355 (Tex.Cr.App.2002),
recently addressed this issue and held that the Article 37.07, section 4(a)
reference to good conduct time does not violate State due course of law and
Federal due process protections when applied to defendants whose actual time in
prison is affected by Section 508.149(a). 
Luquis is dispositive of this issue.  Appellant=s first issue is overruled. 

In his
second issue, appellant argues that the trial court abused its discretion when
it refused to hold an evidentiary hearing on his motion for new trial.








A hearing
on a motion for new trial is not required on the ground of ineffective assistance
of counsel.  Reyes v. State, 849 S.W.2d
812, 813 (Tex.Cr.App.1993).[1]  The trial court must determine whether an
affidavit presented with the motion for new trial shows reasonable grounds
which would entitle the accused to a hearing on the motion.  Jordan v. State, 883 S.W.2d 664, 665
(Tex.Cr.App.1994).  A defendant has the
right to a hearing on a motion for new trial when the motion raises matters
that cannot be determined from the record. 
Torres v. State, 4 S.W.3d 295, 296 (Tex.App. - Houston [1st Dist.] 1999,
no pet=n). 








   In this case, the trial court issued an
order after receiving the motion for new trial asking that specific allegations
be heard by affidavit.  The court
received affidavits in response to its request and requested additional
affidavits, which were provided.  The
record reveals that the court reviewed the affidavits before ruling on the
motion for new trial.  We also have
reviewed the affidavits appellant presented in support of his motion for new
trial.[2]  We agree with the trial court that the
motion does not raise matters which require an evidentiary hearing.  The trial court did not abuse its discretion
when it denied the motion for new trial without holding a live hearing.  The second issue is overruled.

In his
third issue, appellant urges that the trial court erred in finding his
daughter, A.I.,  competent to
testify.  TEX.R.EVID. 601(a)(2) provides
that children or other persons who, after being examined by the court, appear
not to possess sufficient intellect to relate transactions with respect to
which they are interrogated are incompetent to testify.   The trial court=s ruling will not be disturbed upon review
unless an abuse of discretion is shown. 
Broussard v. State, 910 S.W.2d 952, 960 (Tex.Cr.App.1995).  A child is competent to testify unless it
appears to the court that she does not possess sufficient intellect to relate
the transaction about which she will testify. Broussard v. State, supra at 960.  The trial court allowed attorneys for both sides
to question A.I. outside the presence of the jury for a determination of
competency.  A.I. was seven years old at
the time of trial.  During an extensive
voir dire of A.I., the prosecutor elicited testimony that A.I. knew it was bad
to tell a lie, that A.I. knew the difference between pretending and not
pretending, and that A.I. understood that she had to tell the truth in the
courtroom.  The trial court did not
abuse its discretion.  The third issue
is overruled.

In his
fourth and fifth issues, appellant asserts that he received ineffective
assistance of counsel at the guilt/innocence stage and at the punishment
stage.  When confronted with a claim of
ineffective assistance of counsel, we apply the two-part test set forth in
Strickland v. Washington, 466 U.S. 668 (1984). 
The first prong of the Strickland test requires appellant to show that
his counsel=s performance was Adeficient.@ Strickland v. Washington, supra at 687. A showing that counsel was
deficient requires a showing that the representation fell below an objective
standard of reasonableness.  Tong v.
State, 25 S.W.3d 707, 712 (Tex.Cr.App.2000). 








The second
prong of the Strickland test requires appellant to show that there is a
reasonable probability that, but for counsel=s unprofessional errors, the result of the proceeding would have been
different.  Tong v. State, supra at
712.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Strickland v. Washington, supra at 694.  There is a strong presumption that counsel=s actions fell within the wide range of
reasonable professional assistance. 
Appellant has the burden to overcome the presumption that, under the
circumstances, the challenged action might be considered sound trial strategy.
The standard of proof for ineffectiveness of counsel is a preponderance of the
evidence.  Ramirez v. State, 987 S.W.2d
938, 943 (Tex.App. - Austin 1999, no pet=n). 

A
defendant is entitled to reasonable effective assistance of counsel, not
perfect counsel judged by hindsight; therefore, more than isolated errors and
omissions will be needed to demonstrate ineffective assistance of counsel.  Guevara v. State, No. 04-00-00340-CR, 2001
WL 1643914 (Tex.App. - San Antonio, December 26, 2001).  Whether the Strickland test has been
met is judged by the totality of the representation.  McFarland v. State, 845 S.W.2d 824, 843 (Tex.Cr.App.1992), cert.
den=d, 508 U.S. 963 (1993); Price v. State, 923 S.W.2d 214, 217 (Tex.App. -
Eastland 1996, pet=n ref=d). 

Appellant
requested and was granted leave to extend the 50-page briefing limit.  Under the general claim of ineffective
assistance of counsel, appellant lists 40 examples which he claims prove that
his trial counsel was deficient.  In his
brief, appellant argues that some of the errors alone require reversal while
the rest, by cumulative effect, establish that the outcome of the proceeding
would have been different.  Appellant
does not designate which of his arguments are which.  His complaints fall into 8 categories.

Appellant
gives the following examples of deficiencies by trial counsel: (1) failing to
investigate as evidenced by the following events during trial (a) defense
counsel realized that Schultz had more drawings and reports at her office, (b)
admitted that they had not seen a videotape of A.I.=s brother, and (c) failed to consider
evidence critical to appellant=s defense; (2) failing to object to the punishment jury charge because
it included an instruction on good conduct time; (3) moving for a competency
examination in front of the jury; (4) failing to make proper objections; (5)
failing to make an opening statement at the guilt/innocence stage and at the
punishment stage; (6) failing to preserve error; (7) failing to object to
questions about appellant=s silence after his arrest; and (8) failing to impeach A.I.








In Example
No. 1, appellant claims that trial counsel failed to adequately investigate the
case.  An attorney is ineffective if the
failure to seek out and interview potential witnesses precludes the accused
from advancing a viable defense.  Mallet
v. State, 9 S.W.3d 856, 866 (Tex.App. - Fort Worth 2000, no pet=n). 
When alleging ineffective assistance based on counsel=s failure to conduct a sufficient
investigation, appellant must show how his representation would have benefitted
from the additional consultation.  Paez
v. State, 995 S.W.2d 163, 170 (Tex.App. - San Antonio 1999, pet=n ref=d).

 Even assuming that this failure to
investigate made trial counsel Adeficient@ for
purposes of the Strickland test, appellant has not shown how his
representation would have been improved with the use of the additional
investigation or additional witnesses or that there is a reasonable probability
that, without counsel=s
errors, the outcome would have been different.

In
considering Example No. 2, appellant claims that trial counsel should have
objected to the jury charge because of the reference to good conduct time.  As discussed above, this was not error.  See Bui v. State, supra at 841.

In
considering the remaining Examples Nos. 3 thru 8, appellant has not shown that
any of these individual examples would, standing alone, constitute ineffective
assistance.  Appellant=s trial attorneys  made several objections throughout the trial, took witnesses on voir
dire, and challenged the competency of the complaining witness.  While appellant has identified specific
objections that he claims should have been made, many of these objections could
be considered sound trial strategy. 
Several are explained by the defense attorneys in their affidavits.  Appellant asserts that witnesses who would
have been beneficial to him were not interviewed or asked to testify.  However, the trial attorneys explain in
their affidavits that the testimony of some of the witnesses would have been
repetitive and gave reasons for other witnesses not having been contacted.  Appellant has offered no explanation for how
his defense would have benefitted from an opening statement. 








After
reviewing the entire record, the cumulative effect of these remaining omissions
and commissions in the context of the totality of the representation does not
meet the first prong of Strickland. 
Appellant=s counsel met at least the minimal standards
of effective assistance of counsel set forth by the United States Supreme Court
and the Texas Court of Criminal Appeals.[3]  Appellant=s fourth and fifth issues are overruled.

Because we
have overruled each of appellant=s issues on appeal, the judgment of the trial court is affirmed.

 

W. G.
ARNOT, III

CHIEF
JUSTICE

 

August 22, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

McCall, J., and McCloud, S.J.[4]











[1]Whether or not to grant a new trial on ineffective
assistance of counsel lies within the discretion of the trial court.  Reyes v. State, supra at 813.





[2](1) Lynne A. Corsi, a social worker and attorney,
heavily criticized the testimony of forensic interviewer Janetta Michaels and
psychotherapist Suzanne Schultz in her affidavit.  

(2) Ann Elizabeth Perritt, Aimee=s mother, asserted that possibly Mark Roberts, Aimee=s current boyfriend, could have abused A.I.

(3) Billy Wayne Perritt, Aimee=s father, asserted claims of jury misconduct because
the district attorney=s office told Aimee the night before the verdict Ait=s a done deal. 
It=s all over.  He=s guilty.@

(4) Karen Ann Henshaw, Aimee=s first cousin, said that she believed appellant was
innocent.  Henshaw said that she had not
seen any indication of sexual abuse.

(5) Daivd Lee DeJarnett said that he had been around
appellant and appellant=s children several times and that he had never seen the
children act out sexually or show any fear of appellant.  DeJarnett said that he volunteered to
testify on appellant=s behalf.

(6) Kelly Patricia Martin, appellant=s girlfriend, said that she had seen appellant around
children many times and that she had 
never seen any inappropriate behavior between him and children.  However, after answering a few questions for
David Scoggins, appellant=s attorney at the time, Martin never heard from
Scoggins again.  Martin said that she
would have testified on appellant=s
behalf if she had been asked.

(7) Christina M. Ingold, appellant=s mother,  said
that she had never seen the children act out sexually around appellant.  Additionally, she pointed out that appellant=s first attorney never returned their phone calls and
that eventually appellant  had to hire
new attorneys.  She said that the new
attorneys never spoke to her or her husband.

(8) Lorene Johnson, Aimee=s
grandmother, said that she had never been contacted by appellant=s lawyers. She said that appellant would often help her
out and that she had never heard or seen anything that made her think appellant
was abusing the children.  She also
criticized trial counsel=s treatment of appellant.

(9) Michael Gray, appellant=s current attorney, extensively criticized trial counsel and stated that
videotapes provided by trial counsel were provided so close to the deadline for
the motion for new trial that he was unable to view them. 

(10) Dr. John Hartsell, a psychologist who
treated appellant, said that he was not contacted by appellant=s lawyers to prepare him to testify.  He was also not asked to provide his notes
from appellant=s therapy.  He said that he would have testified that
A.I. may have been motivated to testify to the allegations based on implanting
or the desire to please an adult and that appellant did not fit the profile of
a sex offender.

(11) Appellant also provided
his own affidavit.  Appellant criticized
his first attorney, Keith Brown, for not returning several phone calls and for
failing to show up at the motion to withdraw hearing.  Appellant also criticized his trial counsel for not hiring an
investigator based on lack of funds, for failing to prepare him to testify, and
for failing to explain the process to him.





[3]In Jackson v. State, 973 S.W.2d 954, 957
(Tex.Cr.App.1998), the court said:

 

Experience has taught us that in most instances where
the claim of ineffective assistance of counsel is raised, the record on direct
appeal is simply not in a shape, perhaps because of the very alleged
ineffectiveness below, that would adequately reflect the failings of trial
counsel. 

 

For this reason, we have held that, when direct appeal
has not provided an adequate record to evaluate a claim which might be
substantiated through additional evidence gathered in a habeas corpus
proceeding, we will not apply the general doctrine that forbids raising a claim
on habeas corpus after it was rejected on appeal.





[4]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.